## UNITED STATES *v.* PAGE.

APPEAL FROM THE COURT OF CLAIMS.

No. 1249. Submitted January 5, 1891. — Decided January 19, 1891.

The decision of the President confirming or disapproving the sentence of a general court-martial in time of peace extending to the loss of life or the dismission of a commissioned officer, or in time of peace or war respecting a general officer, under the provisions of the 65th Article of war, is a judicial act to be done by him personally, and is not an official act presumptively his; but it need not be attested by his sign manual in order to be effectual.

*Runkle* v. *United States*, 122 U. S. 543, distinguished from this case.

FRANK A. PAGE filed his petition in the Court of Claims on the 31st day of August, 1887, stating:

"I. That he is a citizen of the United States and a resident of the District of Columbia. II. That on the 18th day of January, A.D. 1865, he was duly appointed and commissioned as a second lieutenant in the Veteran Reserve Corps of the volunteer army of the United States, and served as such officer until the 20th day of September, A.D. 1866, when he was honorably mustered out of such military service of the United States. III. That on the 3d day of October, A.D. 1866, he was duly appointed and commissioned as a second lieutenant in the Forty-fourth Regiment of Infantry of the Army of the United States, to rank as such from the 28th day of July, A.D. 1866, and that he accepted such appointment on the 3d day of October, 1866. IV. That he served in said capacity until the 3d day of August, 1870, when he was transferred to the Tenth Infantry. V. That he continued to serve in said last-

named regiment until the 22d day of September, 1871, when, by order of the President, he was, upon the recommendation of the retiring board of the U. S. Army, retired from active service, and was placed upon the retired list of the Army as such second lieutenant. VI. That from said last-mentioned date to the date of the filing of this petition he has ever since remained a second lieutenant upon the said retired list, subject to all the regulations and orders governing officers upon the retired list; yet, notwithstanding, ever since the 27th day of May, 1874, he has been refused all pay and emoluments to which he is lawfully entitled, by reason, as alleged, of a certain order issued by the Adjutant General of the Army, dated War Department, Adjutant General's Office, May 27, 1874, and purporting to be General Court-Martial Orders, No. 42, wherein and whereby, by paragraph III of said order, it is asserted that your petitioner ceases to be an officer of the Army from the date of said order, by reason whereof the proper officers of the Pay Department of the Army have refused to pay to your petitioner the pay and emoluments to which he is lawfully entitled. VII. Your petitioner avers that the said order, so far as the same purports to dismiss him from the Army of the United States, or to deprive him of his said office, is null and void, and that he is entitled to receive his lawful pay, and to have and retain the said office, notwithstanding the said order; that the court-martial proceedings upon which the said order was predicated were never submitted to or approved by the President of the United States, and without such approval no power existed in the Adjutant General or the Secretary of War to deprive him of his commission or his lawful pay as such second lieutenant.

"And your petitioner claims the sum of seventeen thousand eight hundred and thirty-five dollars and sixty cents ($17,835.60) as and for his pay as such second lieutenant for the period from the 28th day of May, 1874, to the 30th day of June, 1887."

Petitioner subsequently departed this life testate, and the suit was revived in favor of Sally E. Page, as executrix, and, by leave of court, she amended the petition "so as to claim

pay for said deceased as second lieutenant for the period from the 28th day of May, 1874, to the 12th day of October, 1889, being the sum of $20,816.33."

The findings of fact and conclusion of law of the Court of Claims were as follows:

### "*Findings of Fact.*

"I. On January 18, 1865, the claimant was mustered in as a second lieutenant in the Veteran Reserve Corps of Volunteers, and served as such till September 20, 1866, when he was honorably mustered out.

"October 3, 1866, he was appointed second lieutenant in the Forty-fourth Regiment of Infantry, U. S. Army, and accepted the appointment the same day.

"August 3, 1870, he was transferred to the Tenth Regiment of Infantry.

"September 29, 1871, by order of the President, he was retired from active service and placed on the retired list of the Army, on account of wounds received in battle, *i.e.*, the loss of his right arm.

"II. April 29, 1874, a court-martial was convened at New York City by virtue of Special Orders, No. 73, dated April 7, 1874, Headquarters Military Division of the Atlantic, for the trial of Second Lieutenant Frank A. Page (retired). Before this court-martial Lieut. Page was arraigned and tried on the following charges and specifications."

[Here follow three charges, there being one specification under charge I, one specification under charge II, and three specifications under charge III. To these charges and specifications the accused pleaded not guilty. The court found him guilty of the specification under charge I, excepting as to certain words, for which it substituted others, but not guilty of the charge; guilty of charge II and the specification; guilty of charge III and of the second and third specifications thereunder, and guilty of the first specification, excepting as to certain words, and as to those not guilty. The sentence was, "to be dismissed the service of the United States." The charges, specifications, findings and sentence are set forth at length in Finding II of the Court of Claims.]

"III. The proceedings, findings and sentence were transmitted to the Secretary of War, who wrote upon the record the following order, viz.:

"WAR DEPARTMENT,
"WASHINGTON CITY, *May* 27, 1874.

"In conformity with the 65th of the Rules and Articles of War, the proceedings of the general court-martial to the foregoing case, have been forwarded to the Secretary of War, and by him submitted to the President.

"The proceedings and the findings upon the second charge and specification, and upon the third charge under its second and third specifications, are approved.

"With regard to the other findings, the remarks noted by Major General Hancock, who convened the court, are concurred in as follows:

"'The finding to the first specification is not approved. The sale of Lieutenant Page's pay accounts and right of pay to the Piedmont and Arlington Life Insurance Company is not sustained by the evidence. The transaction was unquestionably a pledge as collateral security. But the court having found that it was a sale, it is difficult to account for the rest of the finding to this specification, which describes the subsequent presentation of a claim against the United States for the same pay as false and fraudulent, although it acquits Lieutenant Page of knowing that it was such.

"'In order to constitute fraud there must be a knowledge that the property belongs to another and a design to deprive him of it. If these are wanting it is not fraud. So the word "false," used in this connection, implies an intent to cheat or defraud. Moreover, if the transaction with the Piedmont and Arlington Life Insurance Company was a sale, as the court found it to be, how could the accused, knowing that he had made such a sale, present a claim for the same pay without knowing that it was false and fraudulent? By its finding to the specification the court convicts the accused of presenting a claim against the United States for his pay which was false and fraudulent, and yet acquits him of the charge of "present-

ing for payment a false and fraudulent claim against the United States." The finding to the first charge is therefore likewise disapproved.

" ' Again, having by its finding to the specification of the 1st charge characterized the presenting of a claim for pay as false and fraudulent, the court, by its finding to the 1st specification of the 3d charge, say that he did not do it "fraudulently and dishonorably," nor " knowing that he had no right or property in said claim or payment," and this, notwithstanding that he is by the same finding found guilty of " defrauding the United States."

" ' The finding to this specification, however, convicts the accused of the facts upon which it is based.'

" The sentence is approved.

" Second Lieut. Frank A. Page (retired) accordingly ceases to be an officer of the Army from the date of this order.

"Wm. W. Belknap, *Secretary of War.*

" The said Secretary also issued, May 27, 1874, General Court-Martial Order, No. 42, announcing the sentence of the court-martial, and that ' Second Lieut. Frank A. Page (retired) ceases to be an officer of the Army from the date of this order.' From the date of this order the claimant's name has not been borne on the Army Register, and he has received no pay as an officer of the Army since that time.

" *Conclusion of Law.*

" Upon the foregoing facts, the court determines that the claimant is entitled to recover the sum of $11,572.75 :

" That amount being the sum due the decedent within the statute of limitation of six years before the commencement of the suit."

Judgment was rendered in favor of the claimant accordingly, and the case brought to this court by appeal.

*Mr. Solicitor General* and *Mr. John C. Chaney* for appellant.

*Mr. Joseph E. McDonald* and *Mr. John C. Fay* for appellee.

Mr. Chief Justice Fuller, after stating the case, delivered the opinion of the court.

It is contended that the sentence of dismissal was a nullity because it does not sufficiently appear from the record of the court-martial proceedings and the endorsements thereon that the findings and sentence were approved by the President.

The 65th Article of War, act of April 10, 1806, 2 Stat. 367, c. 20, which was in force at the time of these proceedings, provided :

"Any general officer commanding an army, or colonel commanding a separate department, may appoint general courts-martial, whenever necessary. But no sentence of a court-martial shall be carried into execution until after the whole proceedings shall have been laid before the officer ordering the same, or the officer commanding the troops for the time being; neither shall any sentence of a general court-martial, in time of peace, extending to the loss of life, or the dismission of a commissioned officer, or which shall, either in time of peace or war, respect a general officer, be carried into execution until after the whole proceedings shall have been transmitted to the Secretary of War, to be laid before the President of the United States, for his confirmation or disapproval, and orders, in the case. All other sentences may be confirmed and executed by the officer ordering the court to assemble, or the commanding officer, for the time being, as the case may be."

Undoubtedly the action required of the President under this article is judicial action. He decides personally, and the judgment is his own personal judgment, and not an official act presumptively his. But that judgment need not be attested by his sign manual in order to be effectual. This was so held by Attorney General Wirt (2 Opinions Attys. Gen. 67), Attorney General Cushing (7 Opinions Attys. Gen. 473), and Attorney General Devens (15 Opinions Attys. Gen. 290); and in the opinion of the latter, numerous instances of the attestation of the President's determination by the Secretary of War are given.

It is argued that the President was required by paragraph

896 of the Army Regulations of 1863, then in force, to affix his signature to the statement of his decision. That paragraph provided : " The Judge Advocate shall transmit the proceedings, without delay, to the officer having authority to confirm the sentence, who shall state, at the end of the proceedings in each case, his decision and orders thereon." But the next paragraph, 897, read : " The original proceedings of all general-courts-martial, after the decision on them of the reviewing authority, and all proceedings that require the decision of the President under the 65th and 89th Articles of War, and copies of all orders confirming or disapproving, or remitting the sentences of courts-martial, and all official communications for the Judge Advocate of the Army, will be addressed to ' The Adjutant General of the Army, War Department,' marked on the cover, ' Judge Advocate.' "

This provision, as is pointed out by Attorney General Devens (15 Opinions Attys. Gen. 292), " shows that paragraph 896 was intended to embrace proceedings other than those requiring the decision of the President, namely, proceedings which may be confirmed by the officer who ordered the court to assemble, or the commanding officer for the time being, as the case may be." And the Attorney General concludes that : " In the case of the confirmation of a sentence of dismissal by a court-martial, no formality appears to be prescribed by law for attesting the determination of the President ; and as, in cases of that sort, the attestation of such determination by a written statement, signed by the Secretary of War, is in accordance with long usage, that mode of attesting the President's action, confirming a sentence of dismissal, is to be considered as sufficient" (p. 295). We are satisfied that this view is correct.

Since, therefore, it appeared by the order of the Secretary of War, written upon the record of the court-martial in controversy, that the proceedings had " been forwarded to the Secretary of War, and by him submitted to the President," and that the proceedings and findings upon certain charges and specifications were approved, and that the sentence was approved, the only possible conclusion to be drawn from such statement is that the approval was by the President, in whom

alone was reposed the authority to act.   The Secretary of War declared that he had submitted the proceedings in conformity with the 65th of the Rules and Articles of War; and the 65th article required the whole proceedings to be laid before the President for his confirmation or disapproval, and orders, in the case.   By what process of reasoning can the conclusion be justified that, although these proceedings were laid before the President for his confirmation or disapproval, yet the findings and sentence were approved by some one else, who had no authority to act in the premises?   On the contrary, where the record discloses that the proceedings have been laid before the President for his orders in the case, the orders subsequently issued thereon are presumed to be his, and not those of the Secretary by whom they are authenticated; and this must be the result here, where the approval follows the submission in the same order.

In *Runkle* v. *United States*, 122 U. S. 543, the record failed to show the vital fact of the submission of the proceedings to the President.   The findings of the Court of Claims in that case upon this point were that the proceedings, findings and sentence of the court-martial were transmitted to the Secretary of War, who wrote upon the report that such proceedings, findings and sentence were approved.   But it was not found, nor did the Secretary's endorsement show, that the whole proceedings had been submitted to the President.   The Secretary did, indeed, conclude his order with the statement that, in view of the unanimous recommendation by the members of the court and the previous good character of the accused, and in consideration of evidence by affidavit as to his physical condition, presented to the War Department since the trial, and credible representations as to his inability to pay the fine imposed, the President was pleased to remit all of the sentence, except so much thereof as directed cashiering; but this court held that the order was capable of division into two separate parts, one relating to the approval of the proceedings and sentence, and the other to the executive clemency which was invoked and exercised; and that it was only in relation to the latter that the President seemed to have exercised a personal

power under the Constitution, the power, namely, of granting pardons, while the former indicated on its face departmental action only. And this conclusion was fortified, in the judgment of the court, by the order of President Hayes stating that the record of official action showed that the approval of the proceedings of the court was by the Secretary; that Runkle had presented a petition to President Grant on the day the order cashiering him was issued, averring that the proceedings had not been approved by the President; that this petition was referred to the Judge Advocate General for review and report; and that this report was made; and by which order President Hayes, taking up the matter as unfinished business, and acting as though the proceedings had never been approved, disapproved of the same. "Under such circumstances," said Mr. Chief Justice Waite for the court, "we cannot say it positively and distinctly appears that the proceedings of the court-martial have ever in fact been approved or confirmed in whole or in part by the President of the United States, as the Articles of War required, before the sentence could be carried into execution." And he closed the opinion in these words:

"Such being our view of the case it is unnecessary to consider any of the other questions which were referred to the Court of Claims. Neither do we decide what the precise form of an order of the President approving the proceedings and sentence of a court-martial should be, nor that his own signature must be affixed thereto. But we are clearly of opinion that it will not be sufficient unless it is authenticated in a way to show otherwise than argumentatively that it is the result of the judgment of the President himself, and that it is not a mere departmental order which might or might not have attracted his personal attention. The fact that the order was his own should not be left to inference only."

Inasmuch as it did not affirmatively appear that the whole proceedings had been laid before the President, and it was argued that this must have been so because of the exercise of executive clemency, though the latter was declared to have been influenced by matters subsequent to the trial, it was thought that the order of approval could not be presumed to

have been made by the President upon the strength of an inference drawn from the remission of a part of the sentence. The inference that the President had personally acted could, indeed, be properly drawn from the substantive fact of the submission of the proceedings to him, if that had appeared, but presumption could not supply that fact, and then a presumption upon that presumption be availed of to make out that the approval was the President's personal act. This, as the Chief Justice remarked, would leave the fact that the order was his own, to inference only.

*The judgment of the Court of Claims is reversed and the cause remanded, with directions to dismiss the petition.*