WeldoN, J.,
delivered the opinion of the court:
. The petitioner claims pay as an officer in the United States Navy from February 9,1868, to March 9, 1871, as lieutenant-commander, and also sea pay from September 13, 1867, to February 8, 1868.
The suit is prosecuted under the provisions of an act of Congress approved on the 6th day of June, 1900, which in substance provides that the alleged items of pay due and unpaid to claimant for services as lieutenant-commander in the United States Navy between the dates of September 13, 1867, and March 9,1871, be referred to the Court of Claims. Jurisdiction is conferred on the court to try the case, and that the statute of limitation shall not apply thereto, with the right of appeal to either party. In pursuance of the said statute the claimant filed a petition claiming pay as lieutenant-commander between the said periods.
The claimant, as shown by the findings, entered the Nav}7 in the year 1854, and continued therein, being promoted from time to time, until February 8, 1868, when he was dismissed, pursuant to the sentence of a general court-martial. On March 8, 1871, he was again commissioned as lieutenant-commander as of March 1, 1871, and after being promoted in August, 1887, was in December, 1896, transferred to the retired list.
The claim is founded upon an alleged illegality of the court-martial, its proceedings, the consequent dismissal of the claimant, and a balance of pay from September to February.
The main issue involved in this proceeding is, therefore, the question whether the court-martial was legal in its organization and the proceedings which resulted in the dismissal of claimant were in accordance with law.
The contention of counsel for claimant as to the construction of the statute is, that it intends more than the mere waiver of the statute of limitations, and that by the terms of the statute the claimant is “admitted to be a lieutenant-commander during the time referred to in the private act.”
The defendants’ counsel insists that nothing is admitted in the' statute in favor of the claim; that the only effect of the act is that the statute of limitation is removed, and therefore *483 the demand of the claimant is to be determined upon the same basis of legal right as if the suit had been brought within the period of six years from the time the cause of action accrued. If the dismissal of the claimant was illegal, the statute would commence to run, as to the alleged illegal dismissal, on the 8th day of February, 1868, and as to increase, September, 1867, and would have expired long before the petition was filed.
By the terms of the law giving the court jurisdiction, the claim of Joshua Bishop, “for alleged items of pay due and unpaid to him for services as lieutenant-commander in the United States Navy,” is submitted to the court for adjudication.
The statute, by its terms, does not waive any of the legal rights of the defendants except the statute of limitation, and its only effect is to place the claimant in such a condition as that he may have his claim adjudicated according to law upon the same basis as if the suit had been brought within the statutory period of six years.
The phrase in the statute “lieutenant-commander” is simply the expression of a description of the service, which it is alleged the claimant rendered, without any intention to admit or' concede that during the period of his alleged service he was in law or in fact a commander in the naval service during the time of his dismission.
The legal effect of the statute, therefore, is to confer jurisdiction on the court by the removal of the statute of limitation, the court having jurisdiction of the subject-matter of the claim. ■ ■
The claimant, by his counsel, contends that he is entitled to pay as lieutenant-commander during the entire period from September, 1867, to March, 1871, when he was reappointed in the Navy as a lieutenant-commander, and this contention is based upon the dismissal of the claimant, founded upon the sentence of an alleged illegal court-martial, the illegal proceedings of such court-martial, and the failure to pay claimant what he was entitled to from September, 1867, to February, 1868. It is also contended that the proceedings of the court-martial were not reviewed and approved by the President and were not approved by the officer who ordered the court. The substance of the contentions by the claimant is that the *484 proceedings by which he was dismissed from the Navy were not legal, and therefore he is entitled to pay for the period during which he was in fact out of the naval service of the United States.
Upon the part of the defendants it is insisted that the claimant was lawfully dismissed, and therefore he has no right to recover, and that he was fully paid before dismissal.
On the 5th of September, 1867, it is shown by the findings that the claimant was placed under arrest to await trial by court-martial and served with a copy of charges by order of titesrear-admiral made on September 1 preceding. A court-martml was ordered by the Admiral, consisting of seven officers and a judge-advocate, as shown in finding in. On the-5th day of September, 1867, charges and specifications were preferred against the claimant as shown in finding iv, consisting of two charges, first, drunkenness, and second, neglect of duty, with specifications stating in detail the facts and circumstances of each charge, and on said charges and specifications the court found claimant guilty.
Upon the finding of the court is indorsed, by the Bear-Admiral commanding, the following in substance, that the proceedings are respectfully forwarded and submitted to the Secretary of the Navy for the action of the President under the act for the better government of the Navy of July 7,1862. The judgment and sentence of the court is that the claimant be dismissed from the naval service of the United States.
In the findings are shown the action of the Navy Department and the President, and it is insisted by counsel in that connection that the court-martial proceedings in question should have been fully reviewed by the President, and that before the proceedings reached him they should have been approved or disapproved by the officer who ordered the court.
The findings as to the action of the President embrace a brief statement of the case embodying the substance and charges of the proceedings before the court-martial, with a comment upon the sufficiency of the evidence and the justice of the sentence. At the foot of what is called a brief in the case in the record .of the Executive Department is the following:
*485 , 00 m cd Urq gtg ! << ft. o r® o > 3 p c PB > ^ a & r0 2 s' } p_, ^2 ' 89 r£ > fcr* g at *»cd g & o" \ pj a i £ £. tel «2 o, x g ® 8^ t<j 3 © Ú e2 £ w tr o «H O ® Cl *02 •
Then follows on the same paper the word “approved” and the signature of the President.
It was most earnestly argued that the record of the action of the Navy and Executive Departments is not sufficient to show that the President approved the findings of the court-martial upon his own personal investigation. The record came to the President through and by the Secretary of the Navy, in whose Department the matter was properly pending, and it may be fairly presumed from the finding that the President had personal knowledge of the leading and important features of the case, on which he based his judgment that the result reached by the court-martial was according to the truth and law of the case.
As a result of that finding and approval of the President, the Secretary of the Navy, on February 8, 1868, notified the claimant that the sentence of the court-martial dismissing him from the service had been approved by the President, and that because of such approval he was dismissed from the naval service from the date of the communication, and that thereafter he would not be regarded as an officer of the United States.
In the case of Wilcox v. Jackson (13 Pet., 498) the question was made as to whether the act of the Secretary of War was the act of the President, on which question the Supreme Court said:
“Now, although the immediate agent in requiring this reservation was the Secretary of War, jmt we. feel justified in presuming that it was done by the approbation and direction of the President. The President speaks and acts through the heads of the several Departments in relation to subjects which appertain to their respective duties. Both military posts and Indian affairs, including agencies, belong to the War Department. Hence, we consider the act of the War Department in requiring this reservation to be made as being-in legal contemplation the act of the President; and, consequently, that the reservation thus made was in legal effect a reservation made by order of the President, within the terms of the act of Congress.”
*486 ■ In the case of Williams v. The United States (1 How., 290-297) the Supreme Court, upon the question of the acts of the President to personalty perform all the executive duties of his office, said:
“Such an interpretation of the law this court can by no means admit. * * * The President’s duty in general re-auires his superintendence of the administration, yet this duty can not require of him to become the administrative officer of every Department and Bureau, or to perform in person the numerous details incidental to services, which, nevertheless, he is, in a correct sense, by the Constitution and laws, required and expected to perform. This can not be, * * * because if it were practicable, it would be to absorb the duties and responsibilities of the various Departments of the Government in the personal action of the one chief executive officer. It can not be, for the stronger reason that it is impracticable, nay, impossible.”
That principle of law was announced by the Supreme Court at a period in our history when the duties of the President were not a tithe of what they are at the present time. If the President were required to inspect and investigate personalty every matter that falls within the purview of his official duty, the performance of the task would be impossible and the public business in one of the most important Departments of the Government would be stagnated to an intolerable degree. The law presumes that the President has wise, faithful, and honest counselors to assist him in the discharge of his duties, and he has a right to rely upon them to a certain extent even in the performance of his most delicate and important trust.
While the judicial power of the President, such as is exercised in passing upon the findings and sentence of a court-martial, can not be delegated, the President may avail himself of the. services of a subordinate officer in all ministerial and clerical services which may aid him in the consideration of the finding and sentence of the court-martial; but the approval or disapproval of the finding and sentence must be the individual act of the President. He is the tribunal of final jurisdiction which must pass upon the record and judgment of the court-martial. Therefore, for a court to sustain the sentence of a court-martial it must appear that the President approved the sentence. His personal knowledge of the facts *487 disclosed by the record of the proceedings of the court-martial will be inferred from the terms of his approval.
In the case of Runkle v. The United States (122 U. S., 543) it is said, after referring to the case of Wilcox v. Jackson (supra) and other cases:
“Here, however, the action required by the President is judicial in its character, not administrative. As Commander in Chief of the Army he has been made by law the person whose duty it is to review the proceedings of courts-martial in cases of this kind. This implies that he is himself to consider the proceedings laid before him and decide personally whether they ought to be carried into effect. Such a power he can not delegate. His personal judgment is required, as much so as it would have been in passing on the case if ho had been one of the members of the court-martial itself. He may call others to his assistance in making his examinations and informing himself as to what ought to be done, but his judgment, when pronounced, must be his own judgment, and not that of another. And this because he is the person, and the only person, to whom has been committed the important judicial power of finally determining, upon an examination of the whole proceedings of a court-martial, whether an officer holding a commission in the Army of the United States shall be dismissed from service as a punishment for an offense with which he has been charged, and for which he has been tried.”
In the case of Page v. The United States (137 U. S., 673) it is in substance held that the decision of the President confirming or disapproving the sentence of a court-martial in time of peace extending to the loss of life or dismissal of a commissioned officer is a judicial act to be done by him personally, and is not an official act presumptively his, but it need not be attested by his signature in order to be effectual.
in the case of Fletcher v. The United States (148 U. S., 84) the Secretary of War indorsed upon the record in that case the following order, dating it from the War Department and signing it as Secretary of War:
“In conformity with the sixty-fifth of the Pules and Articles of War, the proceedings of the general court-martial in the foregoing case have been forwarded to the Secretary of War for the action of the President.
“The proceedings, findings, and sentence are approved, and the sentence will be duty executed.”
*488 In relation to that record the court says:
“The presumption is that the Secretary and the President performed the duties devolved upon them, respectively, and it would be unreasonable to construe the Secretary’s indorsement as meaning that he had received the proceedings for the action of the President in conformity with article 65, and had approved them himself and ordered execution of the sentence in contravention of the article.”
In reference to the proceedings of the court-martial it is said:
“As the court-martial had jurisdiction, errors in its exercise, if any, can not be reviewed in these Proceedings.” (Dynes v. Hoover, 20 How., 65; Keyes v. The United States, 109 U. S., 336; Smith v. Whitney, 116 U. S., 167.)
In this case the approval of the President is founded on a condition of facts which affirmatively shows that he was advised in the premises by a knowledge of the case. He may not have read the entire record, but he had such knowledge as would enable him to pass intelligently and knowingly upon the question of the regularity of the proceeding and the justness of the sentence.
It is not necessary to resort to elementary works upon the subject of the law in the discussion and decision of the legal qualities and character of courts-martial; it is sufficient to rely upon what the Supreme Court has said on that subject. In the case of Carter v. McClaughrey (183 U. S., 365) it is said:
“ Courts-martial are lawful tribunals with authority to finally determine anj' case over which they have jurisdiction, and their proceedings, when confirmed as provided, are not open to review by civil tribunals except for the purpose of ascertaining whether the military court had jurisdiction of the person and subject-matter, and whether, though having-such jurisdiction, it had exceeded its powers in the sentence pronounced.”
The court-martial had jurisdiction of the person of the claimant and the subject-matter of the proceeding, to wit, the conduct of the claimant with reference to the performance of his military duties. When he became a part of the naval service he thereby subjected himself to the lawfully constituted courts-martial of the service, clothing them with jurisdiction over his person and conduct.
*489 It is insisted by counsel for claimant that the proceedings of the court-martial are void because Rear-Admiral H. H. Bell, who convened the court, did not approve or confirm the findings of the court. To sustain this theory of the law the attention of the court is called to article 20 of the act of July 17, 1862, entitled “An act for the better government of the Navy of the United States” (12 Stat. L., 605), which is as follows:
“Ahticle 20. Every officer who is by this act authorized to convene courts-martial shall have the power on revisal of its proceedings to remit or mitigate but not to commute the sentence of any such court which by this act he is authorized to approve and confirm.”
In further support of the contention that the sentence is void because it does not appear that the admiral approved or disapproved the sentence, the case of Runkle v. The United States (supra) is cited in which the Supreme Court quotes the opinion of the Attorney-General (11 Op., 21), in which it is said in speaking of a court-martial:
“It sits to pass upon the most sacred questions of human rights that are ever placed on trial in a court of justice; rights which, in the very nature of things, can neither be exposed to danger nor subjected to the uncontrolled will of any man, but which must be adjudged according to law. And the act of the officer who reviews the proceedings- of the court, whether he be the commander of the fleet or the President, and without whose approval the sentence can not be executed, is as much a part of this judgment, according to law, as is the trial or the sentence. When the President, then, performs this duty of approving the sentence of a court-martial dismissing an officer, his act has all the solemnity and significance of the judgment of a court of law.”
The statute provides that an officer who convenes a court-martial shall have power “on revisal of its proceedings to remit or mitigate, but not to commute the sentence of the court, and the question is, Does that provision of the law make it the duty of the officer to indorse upon the proceedings his action remitting, mitigating, approving, or confirming the sentence?
In this case the commanding officer transmitted the proceedings of the court to the Secretary of the Navy for the consideration of the President, without any suggestions, under *490 the nineteenth article of the act for the better government of the Navy, approved July 17,1862 (supra). The latter part of that article reads as follows:
“All other sentences may be determined by a majority of votes, and carried into execution on confirmation of the commander of the fleet or officer ordering the court, except such as go to the dismission of a commissioned or warrant officer, which are first to be approved by the President of the United States.”
The action of the commanding officer was founded upon the construction of the law, that because the sentence involved the dismission of the claimant, it did not require him to take an}7 action in the matter, except to forward the papers to be submitted to the President, in which construction of the law, in the opinion of the court, the officer was correct, and his failure to take any further action did not have the effect to nullify the proceedings of the court-martial.
Upon the question of whether the court was properly constituted, it may be said that it was ordered by the proper officer, to wit, the rear-admiral of the squadron to which the claimant belonged, and was composed of the minimum of officers; but it is insisted by counsel for the claimant that it does not affirmatively appear that a larger number could be not procured.
In reply to this contention it may be said that the Supreme Court has held in substance that, when the commander in chief of a squadron not in the waters of the United States convenes a court martial to try an officer, the courts of the United States will assume when his action in this respect is attacked collaterally, and nothing contrary appeal’s on the face of the order convening the court, that he properly exercised his discretion, and that the trial of the accused by such a court could not be avoided without inconvenience to the service. (Mullan v. The United States, 140 U. S., 240.) That decision was in affirmance of the decision of this court (23 C. Cls. R., 40), in which is quoted approvingly:
. “Wherever a statute gives a discretionary power to any person, to be exercised by him upon his own opinion of certain facts, it is a sound rule of construction that the statute constitutes Mm the sole and exclusive judge of the existence of those facts.”
*491 On the 30th of May, 1867, the claimant was suspended from duty from 4 to 8 o’clock a. m. by order of Lieut. Commander C. C. Carpenter, and on the same dair from 6 to 8 o’clock p. m. was restored to duty by Bear-Admiral H. H. Bell. It is insisted that his suspension and subsequent restoration were in law a discharge from all liability for the same offense for which ho was tried and sentenced in the September following. His suspension from duty and restoration to duty on the 30th of May did not have the effect to relieve him from arrest and conviction at a subsequent period. His suspension was not a punishment, but simply had the legal effect of an arrest, and his restoration to duty only discharged him from the consequences of arrest and did not have the effect to discharge him from responsibility of the offense for ivhich he was suspended and for which he wras subsequently tried.
The petition is also based on a claim for additional pay from September 13, 1867, to February 8, 1868, in the sum of §257.13, being the difference between sea and shore pay, sea pay and waiting orders, and shore pay and waiting orders.
Upon this branch of the case the findings show that the claimant was detached from the U. S. S. Wyoming on September 12, 1867, and directed to report to Lieut. Commander C. C. Carpenter for passage to the United States in the U. S. S. Wyoming, under his command, and that upon claimant’s arrival he should report to the honorable Secretary of the Navy. This order was made by the rear-admiral commanding the Asiatic Squadron. In obedience to that order the claimant sailed for and arrived in the United States and reported to the Secretary of the Navy on February 9, 1868, and then and there received his order of dismissal, as shown in the findings.
The tenth finding shows the amount claimed founded upon the claimant’s contention and the amount which has been paid upon the contention of the defendants.
The court decides that the claimant is not entitled to recover for services during which time he was out of the Navy bjr the sentence of the court-martial, and that he is not entitled to recover the difference between what -was paid him and what he claims from September, 1867, to February, 1868, and therefore the petition is dismissed.