## Ex parte SMITH.

District Court, D. Maine, S. D.
Jan. 21, 1931.

Harry T. Smith, in pro per.

William B. Nulty, Asst. U. S. Atty., of Portland, Me.

PETERS, District Judge.

The petitioner, Harry T. Smith, was formerly a lieutenant (junior grade) in the United States Navy. On March 14, 1926, he deserted the navy and remained absent in desertion until he surrendered himself to the naval authorities on May 29, 1930. He was presently tried by a regularly constituted court-martial of the navy on charges of desertion and embezzlement, the latter being covered by a formal charge of "scandalous conduct, tending to the destruction of good morals." He was convicted by the court-martial and sentenced to be dismissed from the naval service and to be imprisoned for twelve months. The proceedings were approved by the Navy Department and a record of the proceedings submitted to the President, who, on October 3, 1930, confirmed the sentence and dismissed Smith from the naval service.

The only question open to this court in such a situation on habeas corpus is whether the court-martial had jurisdiction of the case and whether the sentence was in accordance with law. It is not necessary to refer to the numerous authorities on this proposition. A leading case is Dynes v. Hoover, 20 How. 65, 15 L. Ed. 838.

Petitioner claims that the court-martial had no jurisdiction over him for the reason that his name was not carried on the official register of commissioned and warrant officers of the navy after 1927, and that this action amounted to affirmative action by the President in dropping him from the rolls.

The petitioner also claims that his position is supported by the opinion of the Comptroller General, who decided that the petitioner was not entitled to the pay and allowances of his rank after the date of his surrender to the naval authorities.

The views of the Comptroller General could not be conclusive on the question of the jurisdiction of a court-martial over a defendant, even if he had given his opinion on that point, which he did not. In one letter to the Secretary of the Navy the Comptroller General makes the statement, "On the present record the facts do not show Smith so in the Naval Service as to be entitled to pay

and allowances as a Lieutenant (junior grade)." This statement only affects the matter of pay, and was later so expressly limited by the Comptroller General.

Of no more effect is the action of a Bureau of the Navy Department in its failure after 1927 to continue the petitioner in the list of naval officers published by it in the book commonly referred to as the Navy Register.

On examining the registers in evidence, it appears that after the list of commissioned officers and after the retired list there are lists headed "Dismissed," "Dropped," "Deserted," "Discharged," etc. In 1926, Smith's name appears as in the active list. In 1927 he is carried under the heading of "Deserted." In 1928 his name does not appear at all. If he had been dropped after three months by the President, as he was authorized to do, Smith's name naturally would have been carried in the register of the next year under the heading of "Dropped." The fact that he was not carried under that heading is as much evidence that he was not dropped as the fact that he was not carried in the commissioned list is evidence that he was no longer commissioned. Neither is more than secondary evidence and not conclusive.

Article 36 of the Articles for the Government of the Navy provides that:

"No officer shall be dismissed from the Naval Service except by order of the President or by sentence of a general court-martial; and in time of peace no officer shall be dismissed except in pursuance of the sentence of a general court-martial or in mitigation thereof; provided that the President is authorized to drop from the rolls of the Navy * * * any officer thereof who is absent from duty without leave for a period of three months or more. * * *"

■ The contention of the petitioner that the failure of the Navy Department to carry his name in the register, after it carried him in the issue of 1927 as a deserter, was equivalent to action by the President under Article 36 in dropping him from the rolls, is without merit. The affirmative action of the President authorized by law, in a matter so important as the dropping from the rolls of a naval officer, cannot be inferred from the mere fact that the Navy Register notes him one year as a deserter and subsequently omits his name. The very fact that in 1930, in pursuance of the sentence of a general court-martial, the President ordered his dismissal from the navy, shows that there had been no previous action separating Smith from the service, and so long as he was not so separated the court-martial had jurisdiction of the offense. The fact that a bureau of the Navy Department publishing the register saw fit to adopt the administrative practice of omitting an officer's name after it had once published him as a deserter cannot, of course, be binding upon or be construed to be the act of the President, in a matter which requires a quasi judicial action on the part of the President.

The authority given the President to drop naval officers from the rolls is of the same general character as the provisions in the Army Regulations that no sentence of a court-martial of the dismissal of a commissioned officer shall be carried into effect until it is approved by the President and requiring the same affirmative action. As to the latter, the Supreme Court has stated in U. S. v. Page, 137 U. S. 673, 11 S. Ct. 219, 34 L. Ed. 828, and later quoted with approval in U. S. v. Fletcher, 148 U. S. 84, 13 S. Ct. 552, 554, 37 L. Ed. 378, that the action of the President must be affirmative action and not inferentially his action. In the latter case the court says:

"Undoubtedly the action required of the president under this article is judicial action. He decided personally, and the judgment is his own personal judgment, and not an official act presumptively his."

It appears from the correspondence made a part of the record of the proceedings of the court-martial that the President never directed the name of the petitioner to be dropped from the rolls of the Navy, because of his unauthorized absence, and took no action until the dismissal was ordered after the proceedings of the court-martial had been brought to him for approval. I have no doubt that the court-martial had jurisdiction. There is no question as to the legality of the sentence. The writ may be dismissed.