## UNITED STATES v. ANDERSON.

### No. 3776.

Circuit Court of Appeals, Fourth Circuit.

April 2, 1935.

Armistead L. Boothe, Atty., Department of Justice, of Washington, D. C., and O. H. Doyle, Asst. U. S. Atty., of Anderson, S. C. (Charles C. Wyche, U. S. Atty., of Greenville, S. C., Will G. Beardslee, Director, Bureau of War Risk Litigation, and Thomas E. Walsh, Atty., Department of Justice, both of Washington, D. C., on the brief), for the United States.

Calhoun A. Mays, of Greenwood, S. C., and T. C. Callison, of Lexington, S. C. (Mays & Featherstone, of Greenwood, S. C., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is an appeal from a judgment entered in the District Court of the United States for the Western District of South Carolina, at Greenville. The action was brought by the appellee, herein referred to as the plaintiff, against the United States on a war risk insurance policy and was begun in November, 1931; the plaintiff seeking to recover total permanent disability

benefits under the policy. The case was tried in February, 1934, and the jury returned a verdict in favor of the plaintiff. Upon this verdict judgment was entered.

The policy of insurance was issued to the plaintiff on February 22, 1918, and continued in force through March 31, 1919, when it lapsed. Plaintiff was gassed in September, 1918, while overseas, and claimed that his permanent and total disability resulted therefrom. He was discharged from the service on February 10, 1919.

That the plaintiff was severely gassed and remained in the hospital for more than two weeks is not denied, but on February 5, 1919, an examination was made the report of which stated that there were no residual effects of the gas present and that his lungs and heart were normal. After plaintiff's discharge from the service he returned to his father's home, where he had been engaged in farming before the war, and attempted to do farm work, but claimed that he was unable to work because of the condition of his health. From the year 1919 to the year 1923 he received treatment from two doctors both of whom died before the time of the trial. In the year 1920 and 1921 he received treatment at the government hospitals at Biltmore, N. C., and Greenville, S. C., and later went to the government sanatorium at Johnson City, Tenn., but remained in each hospital only a short period of time, leaving at Johnson City, Tenn. and Greenville, S. C., without permission of the hospital authorities. He left the sanatorium at Johnson City, Tenn., because he did not like it there, and the hospital at Greenville, S. C., because he did not like the food.

The plaintiff was married in 1926, and at the time of the trial his weight was about the same or more than at the time of his enlistment in the army. It was contended on behalf of the plaintiff that he was in a bad nervous condition and that this was the cause of his actions in leaving the various hospitals. The plaintiff drew compensation in various amounts throughout the period of his alleged disability.

The plaintiff was urged repeatedly (more than twenty times) to accept hospitalization in addition to that which he had had, but refused.

Medical evidence offered on behalf of the plaintiff showed tuberculosis, at times active and at other times arrested, trouble with his tonsils, bronchitis, and some heart trouble and other diseases.

The trial judge in his opinion denying the motion for a new trial stated that the plaintiff "was able to be present throughout the long trial, without serious evidence of fatigue" and gave it as his opinion that the slow progress of the various diseases with which the plaintiff claimed to have been afflicted, made it reasonably certain that a cure might have been effected with proper care and treatment and that the plaintiff at the time of the trial appeared "to be in possession of all of his reasoning faculties, though perhaps with a somewhat impaired memory." A number of letters written by the plaintiff with regard to his compensation were intelligently written, and the medical witnesses introduced on behalf of the plaintiff both testified that they did not know anything about plaintiff's condition at the time of the expiration of the policy, but that with proper treatment and hospitalization plaintiff could possibly yet be cured. This being the evidence as to the plaintiff's condition at the time of the trial, it would seem certain that had he accepted the offers of treatment and hospitalization made him by the government, years before, he could have been cured.

A study of the record leads us to the conclusion that the proof offered on behalf of the plaintiff, even when viewed, as it must be, in the light most favorable to him, did not establish the existence of his permanent and total disability at the time of the lapse of the policy. "The policy does not cover total temporary disability or partial permanent disability, and does not authorize or permit any payment for physical or mental impairment that is less than 'total permanent disability.'" United States v. Spaulding, 55 S. Ct. 273, 276, 79 L. Ed. ——, decided by the Supreme Court January 7, 1935. The burden is upon the plaintiff to make his case and evidence of the permanency of his disabilities is essential. Falbo v. United States (C. C. A.) 64 F.(2d) 948; Lumbra v. United States, 290 U. S. 551, 54 S. Ct. 272, 78 L. Ed. 492; United States v. Diehl (C. C. A.) 62 F.(2d) 343.

The evidence offered, the demeanor of the plaintiff throughout the trial, the plaintiff's testimony, and the admitted facts in the case, all go to show that the plaintiff was not totally and permanently disabled even at the time of the trial, and the finding of the jury that he was so disabled at the time of the lapse of the policy must have been a mere guess or conjecture. The courts

have repeatedly held that in these cases we cannot enter into the realm of speculation or conjecture, and that the evidence must be definite and certain.

The long delay in the bringing of the suit is also a circumstance that weighs against the plaintiff. Lumbra v. United States, supra; Miller v. U. S., 55 S. Ct. 440, 79 L. Ed. ——.

The fact most damaging to the plaintiff's contention was his failure to accept the medical treatment and hospitalization offered him by the government. This failure on the part of the plaintiff to seek treatment and adhere to the course prescribed by physicians destroys whatever probative force the continuance of his disabilities might have otherwise possessed. We said in United States v. Galloway, 62 F.(2d) 1057: "Not only is there no showing that plaintiff's disease had then reached such a stage that it would not have yielded to treatment, but it appears also that when the government attempted to treat him in a hospital some years later he refused to accept the treatment. As said in Eggen v. United States (C. C. A. 8th) 58 F.(2d) 616, 620: 'An insured may not convert a total temporary disability existing before lapse into a total permanent disability by neglecting his condition after lapse, and the failure to take treatment may destroy whatever probative value death or permanency of disability occurring after lapse would otherwise have.'"

Also in United States v. Horn (C. C. A.) 73 F.(2d) 770, 772, this court said: "The action of the deceased in leaving the hospital, where he was sent for treatment, without authority of the officials of the hospital, and his continued refusal to accept hospitalization, would preclude recovery in this case, even if it were found that the proof of disability was sufficient otherwise."

See, also, Walters v. United States (C. C. A.) 63 F.(2d) 299; United States v. Ivey (C. C. A.) 64 F.(2d) 653; United States v. Gower (C. C. A.) 71 F.(2d) 366; Mikell v. United States (C. C. A.) 64 F.(2d) 301; United States v. Lancaster (C. C. A.) 70 F.(2d) 515.

Taking into consideration all the facts that the evidence supporting plaintiff's claims reasonably tends to prove, we are, however, of the opinion that there was not sufficient evidence to support the verdict and that the court below should have directed a verdict for the defendant.

The judgment is accordingly reversed.