## UNITED STATES v. KRUMSIEK.
### No. 3548.

Circuit Court of Appeals, First Circuit.
April 10, 1940.

The United States of America, appellant, hereinafter referred to as the defendant, admitted that the said Michael J. Nee enlisted in the military forces of the United States on August 1, 1917, and was killed in action on July 19, 1918, but it denied that he had ever applied for or had been granted war risk insurance; or that insurance premiums had been deducted from his pay, or that he had designated any beneficiary. The defendant also admitted the existence of a disagreement between the parties arising out of the denial of the plaintiff's claim for insurance benefits.

A trial by jury was had in June, 1939, and at the close of the evidence the defendant moved that the court direct a verdict for the defendant for the reason that there was no substantial evidence adduced at the trial on which the jury could properly find that an application had ever been made for war risk insurance, or was ever granted. The motion for a directed verdict was denied, the court being deemed to have submitted the action to the jury subject to a later determination of the legal question raised by the motion. On June 8, 1939, the cause was committed to the jury, who returned a verdict for the plaintiff, with damages to be assessed according to law. Subsequently, the court entered judgment in accordance with the verdict, and the defendant claimed an appeal from this judgment.

William J. Hession, of Boston, Mass., and Thomas E. Walsh, of Washington, D. C. (Edmund J. Brandon, of Boston, Mass., and Julius C. Martin, Wilbur C. Pickett, and Young M. Smith, all of Washington, D. C., on the brief), for appellant.

Henry E. Manning, of Worcester, Mass. (J. Joseph MacCarthy and John W. Ceaty, both of Worcester, Mass., on the brief), for appellee.

Before MAGRUDER and MAHONEY, Circuit Judges, and PETERS, District Judge.

MAHONEY, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of Massachusetts. The appellee, hereinafter referred to as the plaintiff, brought this action as beneficiary to recover insurance under the provisions of the War Risk Insurance Act of 1917, 40 Stat. 398, alleged to have been applied for and granted to her uncle, Michael J. Nee, while serving in the military forces of the United States.

Several rulings were assigned as error by the defendant, but these have been waived and the sole question upon appeal is whether there is substantial evidence to support the verdict of the jury finding generally in favor of the plaintiff on the single issue whether the deceased soldier, Michael J. Nee, applied for or was granted a contract of war risk insurance.

The plaintiff in support of her claim that the said Michael J. Nee had applied for and had been granted insurance in the sum of $5000, naming her as beneficiary, introduced certain letters which he had written home, the testimony of herself and members of the family, and the testimony of witnesses who had been intimates of the deceased while in the army.

An examination of the evidence shows that the said Michael J. Nee, who was twenty-eight years of age and unmarried, enlisted in the military forces of the United States on August 1, 1917. After his departure for service overseas on September 8, 1917, he wrote regularly to various mem-

bers of his family until just before his death on July 19, 1918. Many of these letters were introduced in evidence, but only the letter dated December 20, 1917, which he wrote to Mrs. Scott, his sister (who is also the mother of the plaintiff), contained any reference to or mention of insurance. The pertinent parts of this letter are as follows:

"Dear Sister * * * well my dear Sister i am glad that you got the money from the State that was not so bad for xmas i am glad you got it as i could not send anything home after this month i will only draw $14.40c a month as i pay $15 for Liberty Bonds $3.60c Insurance so i wont be able to do mutch with what is left. * * *

"well dear Sister i left that is i made out my Insurance to Josephen it is $5000 that will bring her about $26 a month for 20 years that is if i die of core if i dont she will get nothing and that is a shame but i hope ye will take care of mother and i know dear Sister you will and the libery Bonds you could devoide equily with Malvina * (not legible) Lizie and Eva that will be about $50 each i hope no body will be mad don say any thing to the worcester folks keep things quite."

Mrs. Scott testified that neither she nor her mother received any money from the deceased while he was in the army, but that her mother did receive a certain allotment from the government. She said she did ask her brother to take out insurance "in case anything happened" in a letter which she had written prior to December 20, 1917, and that no mention of insurance was made in any letter after that date. She stated that she had never received any communication from the government notifying her that her brother had applied for insurance.

The plaintiff testified that the only reference to insurance by her uncle in any letter was in the letter of December 20, 1917, and that she had never been advised by the government that he had applied for insurance. Her sister, Mrs. Ready, also testified that she knew of no reference to insurance by her uncle in any letter other than that of December 20, 1917.

The plaintiff also relies upon a letter dated July 6, 1931, from Joseph J. Hurley to plaintiff's counsel, and an affidavit of said Hurley made in July, 1932. In this affidavit Hurley recited that from August, 1917, until late in February, 1918, he had been corporal of the squad of which Michael J. Nee was a member, and from that time until the time of Nee's death he remained closely associated with him; that they were close personal friends and that he had advised Nee to take out insurance; that Nee told him many times he was glad he had taken out insurance because of the close calls he had had; also that Nee had borrowed money from him because he said he had not much left after his insurance and Liberty Bond money had been taken out.

Roger J. Hagan testified for the plaintiff that he and the deceased were close personal friends, and that they always talked together. He said that he had tried to get Nee to take out $10,000 worth of insurance but that Nee said he would take out only $5000. He said that conversation took place before they marched up to take out insurance. He testified that on the first day of February, 1918, the platoon of which Nee and he were members marched up to the building in Commecourt, France, and each member of the company went in one at a time. When Nee came out he said to Hagan: "If I get bumped off my niece will be rich," but did not say anything at that time about the amount of insurance he had taken out. He said his niece was Josephine Scott.

Lewis S. Sasser testified for the defendant that the records showed that on February 1, 1918, Hagan and Nee had signed allotment forms and that during the month of February, 1918, sixty-three members, including Hagan, had applied for insurance but Nee's name does not appear in these records; that Nee signed his payroll each month and receipted for the cash balance paid him after the monthly deduction of $15 for Liberty Bonds. He stated that the records showed that Nee never received less than $18 in cash in any month.

After a study of this record, the conclusion is that the evidence produced by the plaintiff, even when viewed in the light most favorable to her, does not establish the fact that Michael J. Nee ever applied for or was granted insurance. The burden is upon the plaintiff to make out her case. United States v. Anderson, 4 Cir., 76 F.2d 337.

It is important when weighing the probative value of the letter of December 20, 1917, to bear in mind that a valid designation of a niece as a beneficiary could not be made under the laws and

regulations governing the issuance of war risk insurance until after the passage of the Act of December 24, 1919, which was a considerable time after the death of said Michael J. Nee. Under a provision of the Act of October 6, 1917, § 402, 40 Stat. 409, 410, the insurance was "payable only to a spouse, child, grandchild, parent, brother or sister". If a niece was named as a beneficiary, she would not come within the class of persons named in the statute. The designation would be void, but the application would be valid, and the insurance would "be payable to such person or persons, within the permitted class of beneficiaries as would under the laws of the State of the residence of the insured, be entitled to his personal property in case of intestacy". By the Act of December 24, 1919, § 13, 41 Stat. 375, the permitted class of beneficiaries for insurance was enlarged to include nieces among the persons enumerated. The Act was made retroactive and deemed to be in effect as of October 6, 1917. Had the said Michael J. Nee made application for insurance in December, 1917, and designated his niece as beneficiary, the Act of December 24, 1919, would thus have made, by its retroactive force, the designation valid. But it seems to be mere conjecture to say that he did make application in December, 1917, or at any time.

In this letter of December 20, 1917, Nee states that he would be unable to send any money home after December, 1917, because he would only draw $14.40 a month after deducting $15 for Liberty Bonds and $3.60 for insurance. The positive testimony of the defendant is that he received not less than $18 per month, as evidenced by the payrolls signed by Nee, showing no deduction for insurance. The absence of any record of deductions made for insurance and the signed payrolls contradict the statements made in the letter that he had ever taken out insurance.

The testimony of the witness Hurley contains no direct statement that he ever saw an application by Nee for insurance. His only information as to such application came to him through statements made to him by Nee.

This is true also of the testimony of Roger J. Hagan. He only knew what Nee had told him. He did not see Nee apply for insurance, nor did he ever see an application for insurance signed by Nee. Moreover, the testimony of Hagan is of little value in ascertaining whether Nee

ever did apply for insurance. The only reference by Nee to insurance in any of his letters to his relatives is in the letter of December 20, 1917, while Hagan fixes the date of Nee's application for insurance as February 1, 1918. Further the official records of the government nowhere show that Nee had ever applied for insurance, or had done anything which would have given him the right to regard himself as insured. These records stand uncontradicted, and no evidence was introduced to show that they were either negligently or incompetently kept.

In United States v. Chemical Foundation, 272 U.S. 1, 14, 15, 47 S.Ct. 1, 6, 71 L.Ed. 131, the Supreme Court said: "The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." Confiscation Cases, 20 Wall. 92, 108 [22 L.Ed. 320]; United States v. Page, 137 U.S. 673, 679, 680 [11 S.Ct. 219, 34 L.Ed. 828]; United States v. Nix, 189 U.S. 199, 205 [23 S.Ct. 495, 47 L.Ed. 775].

The case of Jenkins v. United States, D. C., 22 F.2d 568, is not in point. In that case there is unqualified testimony that Jenkins filled out the application for insurance in the presence of First Sergeant Adams and the Battery Clerk. Also there is the testimony by the Chaplain that after the death of deceased he went to the company's headquarters and that the record there showed that Jenkins had made application for insurance, naming his mother as beneficiary, in the amount of $10,000. In the case at bar there is no testimony that anyone ever saw the application for insurance.

In the case entitled Blair v. United States, 8 Cir., 47 F.2d 109, 111, the court said: "While the courts are liberal in construing these insurance policies, and resolve doubts in favor of the insured, they are not warranted in granting relief without evidence. The government has been and is just in its treatment of its disabled soldiers, but it should not be imposed upon, and its desire to be just made the means of speculative and unjust claims."

In United States v. Anderson, supra, it is stated that [76 F.2d 338]: "The courts have repeatedly held that in these cases we cannot enter into the realm of speculation or conjecture, and that the evidence must be definite and certain."

78

■ Conclusion of facts must be supported by substantial evidence. In Edison Co. v. Labor Board, 305 U.S. 197, at page 229, 59 S.Ct. 206, at page 217, 83 L.Ed. 126, the court said: "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. * * * Mere uncorroborated hearsay or rumor does not constitute substantial evidence."

In the present case, the verdict of the jury could be justified only on the grounds of speculation or conjecture. We do not find any substantial evidence that Michael J. Nee ever applied for or was granted insurance. There was not sufficient evidence to support the verdict. The court below should have directed a verdict for the defendant.

The judgment of the District Court is reversed, the verdict set aside and the case remanded to that court with directions to enter judgment for the defendant.