UNITED STATES

v.

Airman First Class Shermaine T. COX,
United States Air Force.

ACM 33384.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 21 July 1998.

Decided 3 May 1999.

Appellate Counsel for Appellant: Colonel Douglas H. Kohrt and Captain Patience E. Schermer.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo, Major Ronald A. Rodgers, and Captain Tony R. Roberts.

Before YOUNG, Senior Judge, SPISAK, and SCHLEGEL, Appellate Military Judges.

## OPINION OF THE COURT

YOUNG, Senior Judge:

The appellant asks us to set aside the approved findings and sentence because the convening authority did not personally sign the action. We decline to do so.

### I. Facts

The appellant pled guilty and was convicted of larceny, forgery, and wrongfully using marijuana and methamphetamine on divers occasions. Articles 121, 123 and 112a, UCMJ, 10 U.S.C. §§ 921, 923, and 912a. The military judge sentenced him to a bad-conduct discharge, confinement for 3 years, and reduction to E–1.

In his clemency submissions, the appellant asked the convening authority to waive the automatic forfeitures for the benefit of his family. See Article 58b, UCMJ, 10 U.S.C. § 858b. The staff judge advocate (SJA) recommended the convening authority take the following actions: (1) approve the findings and sentence, except for confinement in excess of 30 months (pursuant to the accused's pretrial agreement); and (2) not approve the waiver of automatic forfeitures. The SJA sent all post-trial documents to the convening authority on 14 September 1998 for final action on the case. On 21 September 1998, the SJA received the appellant's package back. The convening authority's signature and/or initials appeared on the top of the staff judge advocate's recommendation (SJAR), each document contained in the clemency matters, and the SJA's addendum. The convening authority had not signed the action. Attached to this package was a hand-written note from the convening authority which read: "I am inclined to waive automatic forfeitures having them paid directly to accused's dependents for the depen-

dents' benefit." The SJA met in person with the convening authority to try to persuade him not to waive the automatic forfeitures; nevertheless, the convening authority decided to waive them. According to an affidavit submitted by the SJA, the convening authority directed him to reaccomplish and sign the final action reflecting his decision. The SJA signed the action "for" the convening authority.

## II. Discussion

■ Approval of the findings and sentence of a court-martial decision is solely within the discretion of the convening authority. Article 60(c)(1), UCMJ, 10 U.S.C. § 860(c)(1); *United States v. Spurlin*, 33 M.J. 443, 444 (C.M.A.1991). Rule for Courts–Martial (R.C.M.) 1107(f)(1) provides, in relevant part, that "[t]he action shall be signed personally by the convening authority. The convening authority's authority to sign shall appear below the signature."

The appellant claims that the convening authority's failure to personally sign the action renders it void *ab initio*—in other words, the findings and sentence have not been lawfully approved. The appellant further asserts that, because no lawful action has been taken on the case, we are powerless to apply the harmless error test of Article 59(a), UCMJ, 10 U.S.C. § 859(a), and must instead return the case to the convening authority for his personal action.

The question of what form the approval of court-martial proceedings should take dates back to the 19th century. The issue was first presented in *United States v. Runkle*, 122 U.S. 543, 7 S.Ct. 1141, 30 L.Ed. 1167 (1887). In 1872, Major Runkle was convicted by court-martial and sentenced to a dismissal, confinement, and a fine. At the time, no officer could be dismissed in peacetime as a result of a general court-martial sentence "until after the whole proceedings shall have been transmitted to the Secretary of War to be laid before the President of the United States for his confirmation or disapproval. . . ." Article of War 65, 2 Stat. 359, 367 (1806). The Secretary of War signed an endorsement approving the findings and sentence and announcing that "the President is pleased to remit all of the sentence, except so

much thereof as directs cashiering, which will be duly executed." The Supreme Court found that the President had clearly approved the clemency, but could not say positively that he had approved the findings and sentence, as required. *Runkle*, 122 U.S. at 559, 7 S.Ct. 1141. The Court concluded that, in approving the findings and sentence of a court-martial, the President acted in a judicial rather than administrative capacity. The Court declined to decide "what precise form" the President's approval should take,

> nor that his own signature must be affixed thereto. But we are clearly of the opinion that it will not be sufficient unless it is authenticated in a way to show otherwise than argumentatively that it is the result of the judgment of the President himself and that it is not mere departmental order which might or might not have attracted his personal attention.

*Id.* at 561, 7 S.Ct. 1141.

The Court revisited the personal signature issue in *United States v. Page*, 137 U.S. 673, 11 S.Ct. 219, 34 L.Ed. 828 (1891). The Secretary of War signed the action in this case as well, but included a statement that, in conformity with Article 65, the case had been submitted to the President. The Supreme Court held that the judgment of the President confirming a sentence of a court-martial need not be attested by the President's signature: "[W]here the record discloses that the proceedings have been laid before the President for his orders in the case, the orders subsequently issued thereon are presumed to be his, and not those of the Secretary by whom they are authenticated." *Id.* at 680, 11 S.Ct. 219.

In *United States v. Fletcher*, 148 U.S. 84, 13 S.Ct. 552, 37 L.Ed. 378 (1893), the Secretary of War signed the action approving the findings and sentence. The Secretary's endorsement stated that the record had been forwarded to the Secretary of War for action by the President, but did not say that the case had been submitted to the President. Nevertheless, the Supreme Court held that the endorsement of the Secretary that the proceedings were forwarded as usual was sufficient authentication of the judgment of the President. *Id.* at 89–90, 13 S.Ct. 552.

*Accord Bishop v. United States,* 197 U.S. 334, 25 S.Ct. 440, 49 L.Ed. 780 (1905).

Despite *Page, Fletcher,* and *Bishop,* the *Runkle* rule still survives.

The ruling in Runkle's case has thus practically ceased to be authority. But while it can now scarcely be questioned that an approval by the Secretary of War of a sentence of dismissal of an officer of the army, where the proceedings had presumptively taken the usual direction, would be held valid and effective, *the result of the ruling in that case has been that the President now personally subscribes all such forms of confirmation* .... William Winthrop, *Military Law and Precedents* 462 (2d ed.1920 reprint) (emphasis added). Indeed, the requirement that the convening authority personally sign the action has been a fixture in every *Manual for Courts-Martial* since at least 1928. We suspect the longevity of the rule, despite the Supreme Court's decisions, results from a desire to avoid the appellate issue that inevitably arises when a person other than the convening authority signs the action—did the convening authority personally approve the findings and sentence?

 As the convening authority did not personally sign the action approving the findings and sentence as required by R.C.M. 1107(f), there is clearly error. However, the appellant does not cite, and we could not find, any support for his contention that the action is thus void *ab initio.* In fact, the case law supports the opposite conclusion. Even in *Runkle,* the Supreme Court examined the facts and circumstances surrounding the action to determine if there was sufficient evidence to conclude that the President had acted personally on the case. The action is not void *ab initio.*

We hold that the action in this case represents the personal judgment of the convening authority. It is clear from the SJAR, the addendum, the action, the convening authority's note and endorsements on the clemency matters, and the SJA's affidavit that the convening authority acted personally in approving the findings and sentence in this case. However, we caution SJAs that the proper practice is to reaccomplish the action

and have the convening authority sign personally.

Having found that the convening authority acted personally in approving the findings and sentence, as modified, but error in that he did not personally sign it, we must determine if a substantial right of the accused was prejudiced, and if so, was it harmless. *United States v. Ruiz,* 50 M.J. 518, 525 (A.F.Ct. Crim.App.1998). The appellant has not alleged any prejudice, and we have not found any. Furthermore, the appellant has not claimed that the convening authority did not personally approve the findings and sentence. We hold that the accused was not prejudiced. Furthermore, even if the convening authority's failure to personally sign the action prejudiced a substantial right, the error was clearly harmless. Article 59(a), UCMJ.

We caution counsel to consider carefully any action they ask us to take. If we had declared the action void *ab initio,* as the appellant requested, we also would have invalidated the convening authority's decision to waive the automatic forfeitures, as that was contained within the action. The original convening authority's successor in command may not be so willing to waive them, and recoupment action could follow.

The findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Accordingly, the findings and sentence are

AFFIRMED.

Judge SPISAK and Judge SCHLEGEL concur.