# UNITED STATES *v.* NIX.

# NIX *v.* UNITED STATES.

### APPEALS FROM THE COURT OF CLAIMS.

Nos. 142, 195.  Submitted December 18, 1902.—Decided March 2, 1903.

1. Under sec. 829, Rev. Stat., a United States marshal may elect to be reimbursed his actual travelling expenses incurred in serving writs, but there is no authority in law for allowing him mileage in excess of the distance from the place of arrest to the place of receiving the writs, even if the travel is in a new and unsettled Indian country and there are exceptional difficulties to overcome.

2. Where a United States court is opened for business by order of the judge, it is the duty of the marshal to attend and he is entitled to his per diem fee therefor whether the judge be present or not.

3. A general act is not to be construed as applying to cases covered by a prior special act on the same subject. The marshal for the District of Oklahoma is entitled to fees for transportation of prisoners arrested under warrants issued by United States commissioners as fixed by the statute providing a temporary government for the Territory of Oklahoma, notwithstanding the provisions of the act of Congress of August 19, 1894, applicable to marshals generally throughout the country. The fact that a marshal's accounts have been approved by a district judge is sufficient to cast upon the government the burden of showing any error of fact in his account.

4. Where the marshal charged for travel in transporting a prisoner who

escaped from his custody, and there was no finding, either by the district judge in approving his accounts, or by the Court of Claims, of due diligence on the part of the officer to prevent the escape, the item was held to be properly disallowed, the presumption being that the prisoner escaped by negligence.

THIS is a petition for marshal's fees for the District of Oklahoma, upon which the Court of Claims made the findings of fact set forth in the margin.[1]   36 C. Cl. 593 ; 36 C. Cl. 598.

*Mr. Assistant Attorney General Pradt* and *Mr. Assistant Attorney Brannigan* for the United States.

*Mr. Frank B. Crosthwaite* and *Mr. Franklin H. Mackey* for Nix.

MR. JUSTICE BROWN, after making the foregoing statement, delivered the opinion of the court.

Item 2 of the third finding, namely, " travelling 1153 miles

---

[1] I. The claimant, Evett D. Nix, was United States marshal for the District of Oklahoma from July 1, 1893, to February 24, 1896, appointed, qualified and acting.

II. During said period the claimant, as such marshal, by his deputies, performed services and travel and incurred expenses in behalf of the United States, and his accounts therefor, verified by his oath and approved by the court in accordance with the law, were finally acted upon by the accounting officers of the Treasury Department, and part thereof was allowed and paid, but a part thereof, as more specifically set forth in Finding III, was disallowed, and no portion thereof has been paid to the claimant.

III. Item 2. To travel, 1153 miles in going to serve warrants of arrest, at six cents per mile, $69.18, being for travel in excess of the distance from the place of arrest to the place of receiving writs.  The travel charged for was in a new and unsettled Indian country, without post offices, post routes or section lines.  The defendants were moving about from place to place to avoid arrest, and it was necessary to travel a circuitous route. The deputies had to find fordable places to cross the river to locate the defendants, there being no bridges.  After arrest the defendants were taken by the most direct routes to commissioners for examination.

Item 10. For attendance of the marshal at court, by deputy, for twenty days, at $5 per day, $100.00.

It does not appear whether business was transacted in the court on said days, although the court was opened for business by order of the judge.  It does not appear that the judge was present at court on any of these days.

in going to serve warrants of arrest, at six cents per mile, $69.18," involves the question whether travel in excess of the distance from the place of service to the place of receiving the writs can be allowed, in view of the fee bill for marshals. Rev. Stat. sec. 829, provides "for travel, in going only, to serve any process, warrant, attachment, or other writ, including writs of subpœna in civil or criminal cases, six cents a mile, to be computed from the place where the process is returned to the place of service." This has always been interpreted to mean by the usual travelled route, *Hitch* v. *United States*, 66 Fed. Rep. 937, the length of which is not given in the finding. The excuse for not pursuing the route in this case is that it was a new and unsettled Indian country ; that defendants were moving about from place to place to avoid arrest, and it was necessary to travel a circuitous route; and that, in the absence of bridges, the deputies had to find fordable places to cross the river to locate the defendants.

---

Item 12. This item was charged in claimant's accounts as transportation of prisoners, deputies and guards from the several places of arrest, for hearing before the United States commissioners, whose offices were nearest the places where the crimes for which the prisoners were arrested were committed. The number of miles charged in claimant's accounts for this travel was fifty-one thousand three hundred and fifty-five miles, at ten cents a mile, amounting to five thousand one hundred and thirty-five dollars and fifty cents.

Those accounts were submitted to the United States District Court for Oklahoma under the provisions of the act of February 22, 1875, 18 Stat. 333, and the said accounts, including this item, as above charged, were approved by that court. When the accounts so approved were submitted to the accounting officers, all the charges for travel included in that item were disallowed by them under the provisions of the sundry civil appropriation act of August 18, 1894, 28 Stat. 372–416, which made it the duty of the marshal to take the defendants before the nearest Circuit Court commissioner or the nearest judicial officer having jurisdiction under existing laws, for a hearing, commitment, or taking bail for trial. Subsequently the accounting officers allowed and paid claimant of this item twenty-seven dollars.

After suit was brought in this court, the claimant's deposition was taken in respect to this item, and he proved that, of his own knowledge, eleven thousand four hundred and thirty-three miles were traveled in the transportation of said prisoners, deputies and guards. As to the remainder of the travel he could not testify of his own knowledge, because that travel had been performed by certain of his deputies who were not then in the

However equitable the charge may have been in this particular case, there is no authority of law for its allowance. There is, however, a special provision in the last clause of sec. 829, by which " in all cases where mileage is allowed to the marshal he may elect to receive the same or his actual travelling expenses, to be proved on his oath, to the satisfaction of the court." This seems to contemplate the very contingency which arose in this case, of a number of miles actually and necessarily travelled in excess of the direct route from the place where the process was returned to the place of service. It reimburses the marshal his expenses but denies him a profit upon them. This item must be disallowed.

(2.) Item 10. "For attendance of the marshal at court by deputy, 20 days at $5 per day, $100." The fact that it did not appear whether business was transacted in court on these days, or whether the judge was present in court, was immaterial, in

Territory, and who, he supposed, were in Alaska or the Philippine Islands. The depositions of those deputies were not taken. No other evidence was offered by the claimant to establish the number of miles actually traveled than the approval of the District Court for Oklahoma and his own deposition subsequently taken, as above stated. If the approval of his account by said District Court is competent evidence to establish the number of miles actually traveled, this court finds the ultimate fact that he traveled 51,355 miles. If such approval of the District Court is incompetent to establish the number of miles actually traveled, this court finds that the number of miles so traveled was 11,433 in the transportation of prisoners, deputies and guards, as before set forth.

Item 16. For service of a capias and transportation (mileage) of a deputy, prisoner and guard. The capias was issued by the clerk of the United States District Court at Topeka, Kansas, on an indictment found by the grand jury at Topeka. The capias was received by the claimant in Oklahoma City and was executed by arresting the prisoner named in the capias, who was transported to the United States District Court at Wichita, Kansas.

The claimant charged six cents a mile for going sixty-two miles, from Oklahoma City to Perry, to serve the writ, $2 for the service of the writ, and ten cents per mile each for the deputy, prisoner and guard for 111 miles, $33.30, from Perry, Oklahoma, to Wichita, Kansas, and one meal for the prisoner, 75 cents, making a total of $39.77.

Item 24. For actual expenses for transporting a prisoner from Springfield, Ohio, to the penitentiary at Brooklyn, New York, under a warrant of commitment. The warrant of commitment was issued at Oklahoma, and the marshal transported the prisoner on that warrant to Springfield, Ohio,

view of the fact that the court was opened for business by order of the judge. *United States* v. *Finnell*, 185 U. S. 236 ; *Mc-Mullen* v. *United States*, 146 U. S. 360. For aught that appears, the attendance may have been under the circumstances in which a similar charge was allowed in *United States* v. *Pitman*, 147 U. S. 669. Where the court is opened for business by order of the judge, it is the duty of the marshal to attend, and there is no reason why he should not receive his per diem therefor as if the judge were actually present. This claim is not contested by the government, and should be allowed.

(3.) Item 12, for the transportation of prisoners arrested under warrants issued by United States commissioners, involves two questions: first, whether travel should have been charged from the place of arrest to the *nearest* Circuit Court commissioner, or to the office of the commissioner *nearest to the place where the crimes* with which the prisoners were charged *were committed ;* second, whether, assuming the position of the claimant in this particular to be correct, as matter of law, there was sufficient evidence of the number of miles travelled to entitle him to the charge of $5135.50.

By " An act to provide a temporary government for the Territory of Oklahoma," 26 Stat. 81, a certain portion of the Indian Territory was set off as a territorial government under the

---

where the prisoner was temporarily detained as a witness for the United States in a counterfeiting case. The prisoner having been discharged as a witness in that case at Springfield the marshal continued his transportation from Springfield to New York city on the original warrant of commitment. The prisoner, with a deputy and guard, arrived in New York city too late for the prisoner to be received at the Brooklyn penitentiary on the day of arrival in New York, and he escaped from the custody of the deputy on the night of the same day while they were going to supper in the hotel where they were stopping. The marshal made every effort to retake the prisoner and failed, $90.50.

### Conclusion of Law.

Upon the foregoing findings of fact the court decides, as a conclusion of law, that the claimant recover judgment of and from the United States in the sum of one hundred and eight dollars and ninety-five cents ($108.95) on items 2 and 16 of Finding III.

All other items disallowed.

name of Oklahoma. By section 9 the judicial power of the Territory was vested in certain courts, and the usual executive and judicial offices created. By section 10, " persons charged with *any* offence or crime in the Territory of Oklahoma, and for whose arrest a warrant has been issued, may be arrested by the United States marshal or any of his deputies, wherever found in said Territory, but in *all cases* the accused shall be taken, for preliminary examination, before a United States commissioner, or a justice of the peace of the county, whose office is nearest to the place where the offence or crime is committed. All offences committed in said Territory, if committed within any organized county, shall be prosecuted and tried within said county." By section 28, " the Constitution and all the laws of the United States not locally inapplicable shall, except so far as modified by this act, have the same force and effect as elsewhere within the United States."

This is the act upon which the claimant relies for his right to travel, while, upon the other hand, the government contends that this act was repealed by a general act of August 18, 1894, 28 Stat. 372, making appropriations for sundry civil expenses for the year 1895, one of the clauses of which, under the head of " Judicial," provides that " it shall be the duty of the marshal, his deputy, or other officer, who may arrest a person charged with any crime or offence, to take the defendant before the *nearest* Circuit Court commissioner or the *nearest* judicial officer having jurisdiction under existing laws for a hearing, commitment, or taking bail for trial, and the officer or magistrate issuing the warrant shall attach thereto a certified copy of the complaint, . . . and no mileage shall be allowed any officer violating the provisions hereof."

The object of this statute was manifestly to amend Rev. Stat. sec. 829, which provided that the mileage of the marshal for transportation of prisoners should be computed from the place where the process was served to the place where it was returned. This statute provides that he shall be taken to the Circuit Court commissioner nearest the place of arrest, regardless of the fact by whom the warrant was issued. Inasmuch as the later act is a general one, applicable to marshals generally throughout

the country, we do not think it was intended to repeal or inter-- fere with the former act, providing specially for persons charged with *any* offence or crime in the Territory of Oklahoma, and that in *all cases*, whether the crime was committed against the Territory or the general government, the accused shall be taken before a commissioner, whose office is nearest to the place where the offence or crime was committed.

The rule of statutory construction is well settled that a general act is not to be construed as applying to cases covered by a prior special act upon the same subject. On this principle we held in *Townsend* v. *Little*, 109 U. S. 504, that special and general statutory provisions may subsist together, the former qualifying the latter. See also *Churchill* v. *Crease*, 5 Bing. 177; *Mayone* v. *King*, 51 Fed. Rep. 525, and cases cited; *State* v. *Clarke*, 25 N. J. Law, 54.

It would seem that this construction works no particular hardship upon the government, since in all cases where the criminal is unable to give bail he is required to be ultimately transported for trial to the county wherein the crime was committed.

The second question connected with this item is whether the marshal produced sufficient evidence of the number of miles travelled. His claim was for 51,350 miles at ten cents per mile. He was unable to prove, of his own knowledge, more than 11,433 miles. As to the remainder he could not testify of his own knowledge, because that travel had been performed by certain of his deputies who were not then in the Territory, and who, he supposed, were in Alaska or the Philippine Islands. The depositions of those deputies were not taken. He showed, however, that his accounts had been allowed by the district judge. That was sufficient to cast upon the government the burden of showing any error of fact in his account. *United States* v. *Jones*, 134 U. S. 483. In that case we held that the approval of the commissioner's account by a Circuit Court of the United States, under the act of February 22, 1875, 18 Stat. 333, was *prima facie* evidence of the correctness of the items of that account, and, in the absence of clear and unquestionable proof of mistake on the part of the court, it should be conclusive. We

adhere to that view. It would be an insupportable burden upon the officers of courts if, every time a question was made before the accounting officers of the Treasury of the correctness of their account, they were required to produce affirmative evidence of every item. This was evidently not contemplated by the statute. Notwithstanding this, however, there is no doubt that the account may be impeached for error of law. *McMullen* v. *United States*, 146 U. S. 360. This item should have been allowed in full, less the amount paid.

(4.) Item 24, for actual expenses in transporting a prisoner from Springfield, Ohio, to the penitentiary at Brooklyn, New York, under a warrant of commitment, is the only other one contested. The prisoner with a deputy and guard arrived in New York too late for the prisoner to be received at the Brooklyn penitentiary on the same day, and that night he escaped from the custody of the deputy while they were going to supper in the hotel where they were staying.

As there is no finding, either by the district judge in approving his accounts or by the Court of Claims of due diligence on the part of the officer to prevent the escape, the item was properly disallowed. The presumption is that he escaped by negligence. *State* v. *Hunter*, 94 N. C. 829; *State* v. *Lewis*, 113 N. C. 622; *Shattuck* v. *State*, 51 Mississippi, 575.

*The judgment of the Court of Claims will therefore be reversed and the case remanded to that court for further proceedings in conformity with this opinion.*