## UNITED STATES v. McCABE et al.

(Circuit Court of Appeals, First Circuit. May 4, 1904.)

No. 503.

**1. FEDERAL COURTS—OFFICERS—BAILIFFS.**

Bailiffs and criers of the federal courts, appointed to attend the same, as authorized by Rev. St. § 715 [U. S. Comp. St. 1901, p. 579], though not constitutional officers, are officers of the court.

**2. SAME—CRIERS—BAILIFFS—PER DIEM—ADJOURNMENTS.**

Where criers and bailiffs, appointed under Rev. St. § 715 [U. S. Comp. St. 1901, p. 579], attend a Circuit Court on days to which the court is adjourned by written orders of the judge, they are entitled to receive their per diem therefor, though the court was not actually opened by a judge, and they were not specifically directed by the court or judge to attend.

In Error to the Circuit Court of the United States for the District of Rhode Island.

For opinion below, see 122 Fed. 653.

Charles A. Wilson, U. S. Atty.

Rathbone Gardner, for defendants in error.

Before PUTNAM, Circuit Judge, and ALDRICH and LOWELL, District Judges.

PUTNAM, Circuit Judge. In this case the United States brought a suit on the statutory bond of McCabe as marshal for the District of Rhode Island. The matters in controversy are per diem payments made to the crier and the bailiffs of the Circuit Court for that district in July, August, and September, 1899. They were charged in the marshal's account, and he paid into the treasury only the balance shown thereby. This suit was instituted accordingly, the United States claiming that the payments were unauthorized. The trial in the Circuit Court was by the presiding judge, a jury having been waived under the statute, and the judgment was for the defendants. Thereupon the United States took out this writ of error. The learned judge of the Circuit Court gave a full opinion on the merits, with which we agree; but these controversies have been so protracted, and taken so many phases, that we feel disposed to supplement what he said.

The statutes bearing upon this question are as follows: Section 583 of the Revised Statutes [U. S. Comp. St. 1901, p. 478] reads:

"If the judge of any District Court is unable to attend at the commencement of any regular, adjourned, or special term, the court may be adjourned by the marshal, by virtue of a written order directed to him by the judge, to the next regular term, or to any earlier day, as the order may direct."

Section 672 of the Revised Statutes [U. S. Comp. St. 1901, p. 546] reads:

"If neither of the judges of a Circuit Court be present to open and adjourn any regular, or adjourned, or special session, either of them may, by a written order directed alternatively to the marshal, and, in his absence, to the clerk, adjourn the court from time to time, as the case may require, to any time before the next regular term."

Criers and bailiffs are appointed under the following section of the Revised Statutes:

"Sec. 715 [U. S. Comp. St. 1901, p. 579]. The Circuit and District Courts may appoint criers for their courts, to be allowed the sum of two dollars per day; and the marshals may appoint such a number of persons, not exceeding five, as the judges of their respective courts may determine, to attend upon the grand and other juries, and for other necessary purposes, who shall be allowed for their services the sum of two dollars per day, to be paid by and included in the accounts of the marshal, out of any money of the United States in his hands. Such compensation shall be paid only for actual attendance, and, when both courts are in session at the same time, only for attendance on one court."

The act approved on March 3, 1899, c. 424, 30 Stat. 1116, contains the following provision:

"For pay of bailiffs and criers, not exceeding three bailiffs and one crier in each court, except in the Southern District of New York: provided, that all persons employed under section seven hundred and fifteen of the Revised Statutes·shall be deemed to be in actual attendance when they attend upon the order of the courts: and provided further, that no such person shall be employed during vacation."

Similar provisions had been enacted in several previous years.

The various days for which the payments in dispute were made were days to which the Circuit Court had been specifically adjourned by written orders. No business was transacted on any of them, except adjournments in accordance with further written orders.

Under section 715 of the Revised Statutes [U. S. Comp. St. 1901, p. 579], criers are appointed by the court, and therefore may well be regarded as constitutional officers. Const. art. 2, § 2, cl. 2. Section 715 gives the other persons appointed under it no designation, but they are described by several statutes as bailiffs, thus securing to them a certain official standing. Criers are not customarily sworn, and bailiffs, not being constitutional officers, are neither customarily nor necessarily sworn. The appointments of the latter are usually made by oral designations by the marshal, without any formal order by either judge or court. They are for no specific periods, and the appointees are removable at will in the most informal manner. Nevertheless, by long-continued usage, supplemented by their recognition in the statutes as bailiffs, they must be regarded as having a connection with the courts, continuous until dissolved by some act of either the judge or marshal. It follows that, while bailiffs are not constitutional officers, they are "officers of the court," by common understanding, and within the meaning of that expression as used in United States v. Pitman, 147 U. S. 669, 671, 13 Sup. Ct. 425, 37 L. Ed. 324.

United States v. Pitman related to the per diem compensation of the clerk for his attendance at both the Circuit Court and the District Court for the District of Rhode Island. It was decided in 1893, and at that time the essential statutory provisions involved were practically the same as in the case now before us. The precise point technically determined was that the clerk was entitled to his per diem for attendance, regardless of any question whether a judge was present or business transacted. No distinction was made between the two courts. United States v. Nix, 189 U. S. 199, 23 Sup. Ct. 495, 47 L. Ed. 775,

related to the attendance of a marshal at courts in the territory of Oklahoma. At page 203, 189 U. S., page 497, 23 Sup. Ct., 47 L. Ed. 775, United States v. Pitman was cited as a pertinent decision; and it was added that, when a court is opened by order of the judge, it is the duty of the marshal to attend, and that there is no reason why he should not receive his per diem. In both cases the per diems claimed were allowed. United States v. Pitman, 147 U. S. at pages 671 and 672, 13 Sup. Ct. 426, 37 L. Ed. 324, observes that attendance when court is opened under sections 583 and 672 of the Revised Statutes [U. S. Comp. St. 1901, pp. 478, 546], which is by written order of the judge, "is put by Congress upon the same footing as if the judge were actually present, and business were actually transacted." This seems to be sufficient of itself; but connection with what was said at pages 670 and 671, 147 U. S., page 426, 13 Sup. Ct., 37 L. Ed. 324, makes it positively clear that the court recognized no distinction between adjournments under sections 583 and 672, such as we have here at bar, and the ordinary adjournments from day to day. In United States v. Aldrich, 58 Fed. 688, 7 C. C. A. 431, decided by this court on September 29, 1893, United States v. Pitman was applied; but the case is not of importance here, except that it shows that favorable presumptions should be made in behalf of its officers when the record states that a court was actually opened under color of some of the statutes cited, and that they were in attendance.

As we understand, the only proposition now made by the United States is that under the act of March 3, 1899, neither the crier nor the bailiffs can receive a per diem unless the court is actually opened by a judge on the day to which an adjournment is made by a written order, except so far as they are specially directed or otherwise designated by the court or judge to attend. The Auditor suspended the account in issue as follows:

"Suspended for the reason that the orders of the courts do not show or require that the bailiffs should be in attendance on the above dates."

The decision of the Comptroller of March 18, 1899 (5 Comp. Dec. 583, 586), relied on by the United States, has a very uncertain sound. He thinks that statutes like that of March 3, 1899, do not refer to an order of adjournment made according to sections 583 and 672 of the Revised Statutes [U. S. Comp. St. 1901, pp. 478, 546], but only to an absence of the judge while the session is suspended awaiting the action of the jury, or for any reason not necessitating a formal adjournment to a given day. He adds:

"It means, as I understand it, an order of instruction personal to the bailiff or crier, relating to services to be rendered during the absence of the judge, and not to an order of adjournment which has been preannounced or predetermined."

This is such a strained and imaginative construction, and so inconsistent with the simple phraseology of the statute in question, that, if the United States rested there, we would not need to give the case further consideration. In justice to the Comptroller, it should be said that seemingly his opinion, at page 587, finally left the matter on the invalidity of nunc pro tunc orders. Moreover, by an opinion of April

# UNITED STATES V. M'CABE. 711

5, 1902 (8 Comp. Dec. 699), the same Comptroller apparently reversed his adverse expressions of March 18, 1899, so that we do not perceive any existing effective ruling of the department justifying this defense. In order, however, that we may give every possible consideration to the propositions of the United States, we return to the ruling of the Auditor, and to a substantial repetition thereof at bar to the following effect: The United States contend that "persons" whom, as they say, "the marshal is permitted only upon occasion to appoint," may or may not be necessary to aid him in the discharge of his duties in court. They add that "it is impossible to escape the conclusion that such persons may be altogether unnecessary to the discharge of the marshal's duties, and it would seem to follow that they ought not to be fastened permanently upon the government by the marshal, or by construction, unless their services are necessary; and this necessity ought to be specially found by the court in a definite way."

We may at this point note the peculiar form of the expression in the act of March 3, 1899, "order of the courts." No suggestion has been made, either at bar or by the executive officers, that this is to be literally and technically construed. Everywhere it has been treated as covering not only orders of the courts in session, but orders of absent judges. Congress at times interchanges the words "court" and "judge." This was strikingly illustrated in one of the statutes relating to the removal of Chinese, under consideration by the Circuit Court of Appeals in the Ninth Circuit in United States v. Gee Lee, 50 Fed. 271, 273, 1 C. C. A. 516, where the statutory word "judge" was construed to mean the court. On account of the context, we took a different view in Choy Loy v. United States, 112 Fed. 354, 50 C. C. A. 279, but the uniform practice of the Supreme Court with reference to the statute sustains the Circuit Court of Appeals for the Ninth Circuit We may assume that in this extract from the act of March 3, 1899, the word "courts" was intended to cover not only courts in session, but absent judges. With this explanation, the plain and natural reading of the act of March 3, 1899, brings this case within the rule of United States v. Pitman and United States v. Nix; and there is nothing unreasonable in such a reading, nor anything in any of the statutes, or in any judicial decision or any settled practice, which contravenes it.

Before proceeding further, we must notice an opinion of the Attorney General rendered to the Comptroller of the Treasury under date of April 11, 1903, appended to the brief of the United States, and relied on as supporting their present position. Aside from the fact that the Attorney General is a high officer, we regard his opinions, when rendered to other high officers of the United States for their advice in matters not technically controversial, as quasi judicial and entitled to much respect, but this opinion is not in point. The Attorney General was asked to distinguish the case then before him from United States v. Finnell, 185 U. S. 236, 22 Sup. Ct. 633, 46 L. Ed. 890, where the question was entirely different from that at bar. So far as we understand it, the opinion has no pertinency, because what it had under consideration was not formal orders adjourning the court, but merely directions to the clerk to make certain entries on his journal or dockets, which might well have been made at chambers. The clerk, however, on his

own motion, assumed to open the court and enter adjournments. However this may be, this case is too clear to justify us in resting on anything which has been decided adversely by the Department of Justice or the Comptroller.

The result of the construction now put by the United States on the act of March 3, 1899, is such as to make it read that the persons described in it shall not be deemed to be in actual attendance unless after an order of the court specifically requiring them to be present, and that they shall not otherwise be entitled to compensation. Thus, while its plain reading is affirmative and remedial, the United States make it negative and restrictive, and this constrained interpretation seems to lie at the foundation of their case. Yet United States v. Pitman, 147 U. S., at page 671, 13 Sup. Ct. 425, 37 L. Ed. 324, contains these expressions:

"It is clearly the duty of the officers of the court to be present at the adjourned day, and to obey the written order of the judge with respect to any further adjournment, and there is no reason why they should not receive their per diems therefor as if the judge were actually present."

"We think the court should be deemed actually in session, within the meaning of the law, not only when the judge is present in person, but when, in obedience to the order of the judge directing its adjournment to a certain day, the officers are present upon that day, and the journal is opened by the clerk, and the court is adjourned to another day by further direction of the judge."

The opinion then cites the act of March 3, 1887, c. 362, 24 Stat. 509, 541 [U. S. Comp. St. 1901, p. 640], which impliedly approved payments of per diem to clerks and marshals except for days when the court was opened by the judge, or business actually transacted, or they attended under the sections of the Revised Statutes which we have quoted. The court treated it, not as new legislation, but simply as giving effect to the existing law. This is enforced by turning to the same case as reported in Pitman v. United States (D. C.) 45 Fed. 159, where it appears that the per diems in dispute extended from October, 1854, to December, 1888; and yet the Supreme Court disposed of the marshal's entire account in issue regardless of the date of the approval of the act.

Notwithstanding these decided expressions of the Supreme Court, it is apparent from the opinion of the Comptroller of April 19, 1897 (3 Comp. Dec. 522), that the department had refused to follow them, presumably on the ground that the issue directly involved in United States v. Pitman was only the per diem of the clerk. Thereupon Congress, by the act of March 2, 1895, c. 189, 28 Stat. 958 [U. S. Comp. St. 1901, p. 580], enacted what was, as we have said, afterwards re-enacted, and is now found in the citation made by us from the act of 1899. As we have shown, the United States, in order to sustain their present position, are compelled to construe this statute as though it read negatively instead of affirmatively, while, on the other hand, it is much more reasonable to hold that Congress intended by it to affirm the broad expressions in United States v. Pitman, and make it clear that they applied to criers and bailiffs.

This history of this legislation makes it apparent that the statute of 1895, as re-enacted in 1899, was such as we have characterized it. Nevertheless the highest authorities on the construction of statutes in-

sist that a very useful guide is to ascertain the mischief which it may be reasonably supposed the legislature intended to remedy. The United States criticise the references by the Circuit Court to the congressional debates in regard to the act of 1895, but the criticisms cannot be sustained. It is true that there are some expressions of the Supreme Court which, literally read, would not permit a resort to congressional debates for the purpose of ascertaining the construction of the statutes to which the debates relate, but there are other expressions from a different standpoint. The courts are entitled, not only for the purpose of ascertaining what mischief the legislature intended to remedy, but also for all other purposes which assist in the construction of statutes, to read history, and this is sometimes read better in the legislative debates than anywhere else. Such debates may also be referred to for the purpose of seeking out some fact or suggestion which may give a clue to what is obscure. In the present case, not only the learned judge of the Circuit Court, but also the Comptroller, in 3 Comp. Dec. 522–524, already referred to, justly cited the debates in Congress for the purpose of showing the fact, which they do show, that the mischief which the act of 1895, and subsequent like enactments, sought to remedy, was the refusal of the departments to apply broadly the expressions of the Supreme Court in United States v. Pitman. With the aid of these debates, as well as independently of them, the act of March 3, 1899, must be accepted as remedial.

But we can go deeper. We have shown that, although the persons referred to by section 715 of the Revised Statutes [U. S. Comp. St. 1901, p. 579], are not there designated by any official title, yet they are recognized by the statutes as bailiffs, and that, although appointed by mere word of mouth, and removable the same way, they, in practice, hold a continuous tenure. They are "officers of the court," within that expression in United States v. Pitman, and therefore, without being sought out individually, they must attend on the day to which it is adjourned, according to the citations from that case. When the court is in continuous session and adjourning from day to day, no special order expressly requiring the bailiffs to be present is ever made, formally or verbally, but their attendance on such adjournments is always relied on. As we have shown, no distinction between such adjournments and adjournments to specific days by written orders of an absent judge can be made. It is therefore difficult to understand the origin of the suggestion that bailiffs, in order to receive their per diem, should be specially designated to attend the courts. Nothing of this kind has been known in common practice, either in the federal courts or the state courts, with reference to any of these officers, with the exception of occasional orders which have been entered of late so as to free the courts and their officers from temporary embarrassment arising out of the rulings of the Comptroller to which this opinion refers. Congress knows that, even when courts are opened in the morning with the promise of an idle day, emergencies at times compel the unexpected exercise of all their powers, and demand prompt assistance from every officer over whom they have control. Therefore, as is the general practice, they may well keep equipped, ready on the instant for any such contingency. Consequently an order of adjournment to a specific day

in any judicial tribunal, national or local, is an order that all its machinery shall be in readiness for prompt and efficient action. United States v. Pitman and United States v. Nix were decided on this theory; and no statute directing or providing for the attendance of either marshal or clerk was relied on, or even cited, except the act of 1887, which, as we have shown, was regarded as only declaratory. In neither case, with reference to allowing the clerk or the marshal his per diem, did the Supreme Court rest on any statutory direction to either to be in attendance, or on any specific order in reference thereto. Not a word. in either opinion can be found supporting any suggestion to the contrary. The expression in United States v. Pitman, that "it is clearly the duty of the officers of the court to be present at the adjourned day," and the like expression in United Staes v. Nix, 189 U. S., at page 203, 23 Sup. Ct. 497, 47 L. Ed. 775, that, "where the court is opened for business by an order of the judge, it is the duty of the marshal to attend," had reference only to the common practice which we have explained.

Every adjournment to a specific date, whether made in open court or by written order, involves possibility or probability or expectancy that a judge will be present on the day to which the court is adjourned; and in each case expectancy may be resolved into probability or possibility, or be wholly defeated, and possibility or probability may be resolved into expectancy or accomplishment. Under neither condition is a judge, on coming into court, to send out to the neighboring streets or shops for marshal, clerk, crier, or bailiffs, before proceeding to business, if he be so fortunate as to have any one to send. The courts of some states, held at the shire towns of numerous counties, sat formerly only at certain times named by statute, and for brief periods. From time immemorial the business, relating mostly to common-law suits, had been satisfactorily disposed of in this way, although in .late years, with the increase on the chancery side, statutory provisions and the rules of the courts have directed that they shall be considered open at all times for the purposes of litigation in equity. With the federal courts the emergencies are so numerous and so various that it has been found impracticable, with justice either to the United States or individual suitors, thus to dispose of .judicial business at the stated terms, to be held open only for short periods and then finally adjourned. Consequently some of the federal courts are held open quite continuously, and ordinarily no term is finally adjourned until immediately before the opening of the next statutory term. To meet public emergencies in the districts where the business is most voluminous, the courts are adjourned from day to day, and are always open. In the districts where the volume of business is smaller, adjournments from day to day are not required, but the peculiar emergencies which experience has developed demand frequent open sessions. The practice in this respect is fully explained by the opinion in United States v. Pitman, 147 U. S., at pages 670, 671, 13 Sup. Ct. 425, 37 L. Ed. 324, and this aided the conclusion there reached. The law requires that the statutes on this topic be construed in the light of the presumption that Congress knew the usages of the federal courts, and legislated in harmony therewith.

In United States v. Pitman, 147 U. S., at page 670, 13 Sup. Ct. 425,

37 L. Ed. 324, the court disposes of all the suggestions urged on us by the United States, based upon the assumption that, unless the strict rule of the department is applied, the courts and the marshal might fasten on the United States a body of needless officials and a mass of needless expenses. To that line of reasoning we need no answer except this citation.

We wish it understood that we are dealing only with the precise case before us. By long and well-known usages, in which there has been acquiescence by all concerned, many matters of accounting affecting the courts have been practically settled with reference to conditions as to which the statutes are doubtful, or as to which they make no provision. We are not investigating any such usages, or attempting to unsettle them. Our decision is limited to the proposition succinctly put by the Auditor as we have quoted him, and restated by the United States at bar, to the effect that the only reason given for disallowing the payments under consideration is that the orders directing the adjournments did not specifically require the crier and bailiffs to be in attendance on the days in issue.

To sum up: On the natural and not unreasonable reading of the statutes, so much discussed in this opinion and by the departments, especially that of 1895, and its annual re-enactment to and including March 3, 1899, they contemplate the payments now in dispute. By accepted and necessary usage, the officers of the court, including the crier and bailiffs, attend, without special designation, on any day to which it is specifically adjourned, whether it be by an oral order in open court, or by a written order of an absent judge. Every order of adjournment to a specific day implies an order to the officers of the court to then attend. The underlying rule is as shown in the extracts which we have made from United States v. Pitman and United States v. Nix; and the payments in issue in this case should have been allowed by the department, alike under and independently of the act of March 3, 1899, and nothing in it, or in any other statute, or in any settled usage acquiesced in in the manner we have described, restricts or removes the obligation to make them.

The judgment of the Circuit Court is affirmed, and neither party will recover costs of appeal.