UNITED STATES v. SWIFT.

(Circuit Court of Appeals, First Circuit. June 15, 1905.)

No. 570.

1. UNITED STATES—ACTIONS AGAINST—JURISDICTION.

The jurisdiction of suits against the United States, conferred on the Circuit Courts by section 2 of the Tucker act (Act March 3, 1887, c. 359, 24 Stat. 505 [U. S. Comp. St. 1901, p. 753]), extends to all suits of the class described in which the amount claimed in good faith exceeds $1,000, although a smaller amount may be recovered.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, § 1111.]

2. SAME.

The second clause of section 2 of the Tucker act, as amended in 1898 (Act June 27, 1898, c. 503, 30 Stat. 494 [U. S. Comp. St. 1901, p. 753]), which withholds from the jurisdiction conferred on the Circuit and District Courts by said section suits brought against the United States to recover "fees, salary or compensation for official services of officers of the United States," does not apply to a suit to recover disbursements made by a marshal in paying for the services of court bailiffs. U. S. v. McCabe, 129 Fed. 708, 64 C. C. A. 236, applied.

3. FEDERAL COURTS—APPOINTMENT OF BAILIFFS—LIMITATION OF NUMBER.

Neither Rev. St. § 715 [U. S. Comp. St. 1901, p. 579], authorizing the appointment of bailiffs, not exceeding five, by Circuit and District Courts, nor the provisions of appropriation acts making appropriation for payment of bailiffs in such courts, not exceeding three in each court, limits the power of a judge when holding both courts at the same time, so as to render the appointment of six bailiffs unauthorized.

4. MARSHALS—CONTINGENT EXPENSES.

The provision of Rev. St. § 830 [U. S. Comp. St. 1901, p. 639], that marshals shall be paid their expenses necessarily incurred for fuel, lights, and "other contingencies that may accrue in holding the courts" within their districts, is sufficient to entitle a marshal to reimbursement for the expense of extra bailiffs ordered by the court to take charge of a jury impaneled in a capital case, and the cost of meals furnished officers in charge of witnesses in custody in the same case. U. S. v. Hill, 7 Sup. Ct. 510, 120 U. S. 169, 30 L. Ed. 627, applied.

[Ed. Note.—For cases in point, see vol. 47, Cent. Dig. United States Marshals, § 18.]

Appeal from the Circuit Court of the United States for the District of Massachusetts.

For opinion below, see 128 Fed. 763.

Melvin O. Adams, U. S. Atty., and William H. Garland, Asst. U. S. Atty.

William F. Wharton, for appellee.

Before PUTNAM and LOWELL, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. This case was brought in the Circuit Court of the United States under what is known as the "Tucker Act," approved on March 3, 1887, chapter 359, 24 Stat. 505, as amended by the act approved on June 27, 1898, chapter 503, 30 Stat. 494 [U. S. Comp. St. 1901, p. 752].

The seventh section of the act of 1887 provides that it shall be the duty of the court to cause a written opinion to be filed setting

forth its specific findings of facts and its conclusions of law. It provides, however, that, if the suit be in equity or admiralty, "the court shall proceed with the same according to the rules of such courts." In the case at bar there is an agreed statement of facts, which is in truth a statement of ultimate facts, so far as it goes; and there is also a careful opinion of the learned judge who presided in the Circuit Court, somewhat elaborating and adding to the agreed statement. Under the statute, that opinion is not to be regarded as the usual opinion of the trial judge, but it must be accepted as a part of the record; and, although the statute makes no specific provision for an agreed statement, we may assume, though we do not decide, that, by analogy to other statutes directing findings of facts by the trial court, this agreed statement must also be regarded as a part of the record. We are justified in these propositions, because the case has been submitted to us by both parties, on the strength of both the statement of facts and the opinion, without any question.

This proceeding comes before us on appeal; but, so far as the Circuit Courts and District Courts are concerned, the section of the Tucker act to which we have referred, and also section 9, carefully distinguished equity and admiralty, and this case, which relates to common-law rights, should more properly have been brought before us on a writ of error. Both this and the form of making up the record were considered and explained in Chase v. United States, 155 U. S. 489, 500, 15 Sup. Ct. 174, 39 L. Ed. 284, and in United States v. Ady, 76 Fed. 359, 22 C. C. A. 223. However, as no question is made by the parties on this account, and as, apparently, there seems to be some question whether the aggrieved party may not proceed in a case of this character by either writ of error or appeal, as he may elect, and as the period for suing out a writ of error in this case has expired, the practical result would be the same whether we dismiss or affirm on the merits, one of which we must do. Therefore we pass by all these questions of formalities.

The United States object to the jurisdiction of the Circuit Court on two grounds: First, because the second section of the Tucker act does not give the Circuit Courts jurisdiction where the amount of the claim is less than $1,000; and, second, because the second section of the amendatory act of 1898, already referred to, reads as follows:

"The jurisdiction hereby conferred upon the said Circuit and District Courts shall not extend to cases brought to recover fees, salary, or compensation for official services of officers of the United States, or brought for such purposes by persons claiming as such officers or as assignees or legal representatives thereof."

As to the first branch of this jurisdictional objection, the United States seem to rest on the fact that, while the demands covered in the original petition amounted to $1,225.59, the sum awarded by the Circuit Court was only $377.59; but, according to the settled construction of other statutes which have fixed the jurisdiction of federal courts in accordance with specific amounts in suit, it is the

amount in good faith claimed which establishes the jurisdiction, and not the amount actually recovered. Schunk v. Moline Company, 147 U. S. 500, 505, 13 Sup. Ct. 416, 37 L. Ed. 255. There are exceptional cases of a very peculiar character, where, on the very face of the record, it is evident that there is no claim which can be substantiated equaling the jurisdictional amount, which can hardly apply at bar. Here the demand was reduced below the jurisdictional amount of $1,000 by the disallowance of one item of $848, as to which it is evident from the opinion of the Circuit Court there was a clearly bona fide claim, and which was rejected only after a somewhat protracted examination of facts and law.

As to the second branch of the jurisdictional question, it must be said it relates more to the merits than to the jurisdiction as such. However that may be, the second section of the act of 1898, relied on by the United States and already quoted, is clearly not applicable to this case. It is maintained by the petitioner that this proceeding is not to recover fees qua fees, but amounts paid by the marshal to other persons who demanded that he should make such payments. It is not, however, necessary that we should consider whether the statute of 1898 would bar this indirect method of giving the Circuit Courts and District Courts jurisdiction for the recovery of fees, because the second section of the act of 1898 refers only to the emolument of "officers of the United States," or persons claiming to be such officers. All the so-called fees in question here were paid to so-called bailiffs of the Circuit Courts and the District Courts. Bailiffs are never sworn in accordance with the statute, and are not "officers of the United States." Section 715 of the Revised Statutes [U. S. Comp. St. 1901, p. 579], authorizing their appointment, describes them as "persons." The ordinary use of the expression "officers of the court" covers them. This was fully explained by us in United States v. McCabe, 129 Fed. 708, 64 C. C. A. 236. The disbursements were ordinary payments to persons employed, and not in any sense official fees.

In United States v. Aldrich, decided by us on September 29, 1893, 58 Fed. 688, 7 C. C. A. 431, we referred to the fact that it did not always follow that, because a certain appropriation act provided that moneys thereby appropriated should not be applied in certain payments, the persons claiming payments were not entitled to recover where the right to them is supported by general legislation. It is true, cases may arise where, notwithstanding the general legal right, there may be no appropriation, so that a disbursing officer who had made disbursements might be liable on his official bond or otherwise. This question, however, did not arise in United States v. Aldrich. Also, in the present case, no issue can arise based upon the proposition that the petitioner had disbursed money contrary to the provisions of the statutes of appropriations, because he paid the money in dispute into the treasury, and now proceeds only to recover back what is due him as a matter of legal right. Of course, the judgment when recovered will be subject to the constitutional provision that it cannot be paid unless an appropriation therefor has already been made or hereafter may be made. There-

fore we proceed to determine only the absolute rights of the parties.

On the merits, we agree entirely with the conclusions of the learned judge of the Circuit Court. The demands in dispute relate to payment of three bailiffs for each court—that is, the Circuit Court and the District Court—when each court is said to have been held at the same place, at the same time, by the same judge; to payment of an additional guard, called in the account a bailiff, for two Sundays, in connection with the care and oversight of a jury impaneled in a capital case then on trial; and the cost of meals furnished officers in charge of witnesses who were in custody in the same capital case, having failed to give the recognizances required by law, and who were therefore fed at the cost of the United States without dispute as to the propriety of that expense, and over whom it was necessary that a guard should be constantly kept.

The statute authorizing the employment of sundry persons who are elsewhere called bailiffs is section 715 of the Revised Statutes, as follows:

"Sec. 715. The Circuit and District Courts may appoint criers for their courts, to be allowed the sum of two dollars per day; and the marshals may appoint such a number of persons, not exceeding five, as the judges of their respective courts may determine, to attend upon the grand and other juries, and for other necessary purposes, who shall be allowed for their services the sum of two dollars per day, to be paid by and included in the accounts of the marshal, out of any money of the United States in his hands. Such compensation shall be paid only for actual attendance, and, when both courts are in session at the same time, only for attendance on one court."

The provisions of the appropriation act of March 2, 1895, c. 189, 28 Stat. 958 [U. S. Comp. St. 1901, p. 580], which is supposed by the United States to reach this case, is as follows:

"For pay of bailiffs and criers, not exceeding three bailiffs and one crier in each court, except in the Southern District of New York," etc.

Like phraseology has been so often repeated in the various appropriation acts that the treasury has come to regard this as amending the Revised Statutes, and limiting section 715 to three bailiffs for each court. This has been so often re-enacted that it may, as thus claimed, fall within the exceptional rule of United States v. Perry, 50 Fed. 743, 1 C. C. A. 648, cited by us in United States v. Aldrich, supra. Even if this were so, it would still follow that each Circuit Court and each District Court is entitled to three bailiffs, making a total of six; and no provision of statute cripples the discretion of the courts on this topic, or imposes the limitation claimed by the United States, or any other kind of limitation. This disposes of the first item in dispute.

The second and third items in dispute resolve themselves into a single proposition, except that the third item, which relates to payment for meals, does not at all come within the claim made by the United States that the act of June 27, 1898, c. 503, 30 Stat. 494 [U. S. Comp. St. 1901, p. 752], already referred to, deprives the Circuit Courts of jurisdiction over payments made for the services of bailiffs. Both items arose during the financial year covered by

the appropriation act of June 4, 1897, c. 2, 30 Stat. 11, 58 [U. S. Comp. St. 1901, p. 3768]. That act contains the following provision:

"For payment of such miscellaneous expenses as may be authorized by the Attorney-General, for the United States courts and their officers, including the furnishing and collecting of evidence where the United States is or may be a party in interest, and moving the records, two hundred thousand dollars."

But claims for payments to an additional guard or bailiff, and for the cost of meals, are not rested on this statute, but on the Revised Statutes, as follows:

"Sec. 830 [U. S. Comp. St. 1901, p. 688]. There shall be paid to the marshal * * * his expenses necessarily incurred for fuel, lights and other contingencies that may accrue in holding the courts within this district," etc.

This provision originated in the act of February 26, 1853, c. 80, § 2, 10 Stat. 165. So far as it affects this case, the phraseology of that statute, with a single exception which we will refer to later, conforms exactly to section 830 of the Revised Statutes. Previous to the act of 1853, the marshal's expenditures of this character were allowed without question and without statute, as being fundamentally necessary to the independent exercise of their functions by the judicial tribunals of the United States, and this statute was rather declaratory of the law than a new enactment.

This provision of section 830 has never been expressly repealed. Nevertheless, in view of many renewed prohibitions of the appropriation acts like that which we have cited from the act of June 7, 1897, c. 2, 30 Stat. 58, the department of justice has assumed to a certain extent jurisdiction over all kinds of incidental expenses involving the administration of justice by the federal courts, and this assumption has been supported by the treasury. On the one hand, this position of the department is not clearly unjustifiable; and, on the other, inasmuch as the provision cited has never been specifically repealed, it is possible to hold that the miscellaneous expenses referred to in the appropriation acts are of a different class from the expenses involved in the contingencies provided for by the Revised Statutes. "Contingencies" has the sound of emergencies, and that there should be a power in the court to provide for them instantly on the spot is reasonable, so that it may well be said Congress did not intend by anything contained in the appropriation acts to take away this necessary provision for exceptional cases. Under the undisputed circumstances of this case, the equity is so strongly in favor of the petitioner, and there is so much doubt as to the condition of legislation, that, following our usual rule with reference to adjudications of courts of appeals in other circuits, we are peculiarly bound to adopt the conclusions of that court for the Eighth Circuit in Campbell v. United States, 65 Fed. 777, 779, 13 C. C. A. 128, and of that court for the Third Circuit in United States v. Dill, 86 Fed. 79, 83, 29 C. C. A. 586, each of which holds the provision which we have cited from section 830 of the Revised Statutes as still in force, and each of which supported the contention of the marshal, claiming reimbursement for expenses involved in

meeting contingencies such as that section contemplated. We may refer also to United States v. Jones, 193 U. S. 528, 530, 24 Sup. Ct. 561, 48 L. Ed. 776. Following these authorities, the facts on this record show that the expenditures in dispute were made to meet clear, instant, and pressing emergencies, and require that we should affirm the conclusions of the Circuit Court.

We may add that this result is further supported by the fact stated to us, and not disputed, that expenditures of the character to which the third item in question relates have always been allowed, by a long-established practice, until the issue was presented as shown on the present record. Therefore, aside from the propriety of our following the decisions of the two Circuit Courts of Appeals which we have cited, the case would seem to fall within United States v. Hill, 120 U. S. 169, 7 Sup. Ct. 510, 30 L. Ed. 627, where almost conclusive weight was given to a long-continued uniform practice of the departments with reference to the accounts of disbursing officers. Indeed, unless the rule of United States v. Hill is liberally followed, disbursing officers and their sureties can never rest in peace, but will be subject to suffering at the hands of the United States the grossest injustice where, relying on a long line of precedents, disbursements made in good faith are involved. The results which have come from the disregard by the departments of this wholesome rule have been intolerable.

We said there was one difference between the phraseology of section 830 of the Revised Statutes and the act of 1853, in which it originated. This comes from the fact that, in revising the statutes, the word "this" was inserted before the word "district" in lieu of the word "the." It must be held that this was a mere slip, otherwise the statute would in this particular be nonsense. Under the act of June 27, 1866, c. 140, 14 Stat. 74, providing for the revision of 1874, commissioners were required to suggest changes in the statutes, and did, in fact, explain them with the notes found in their report. What is now section 830 of the Revised Statutes appeared in their report at page 468, § 294. There the word "this" was substituted for the word "the" in the original act of 1853. This was no change, but only the use of a more appropriate word. The same phraseology is found in Durant's revision, and ran into the first edition of the Revised Statutes. The word "this" first appears in the edition of 1878, and is apparently a mistake in printing. We must accept this as settled by the fact that the decisions in Campbell v. United States, supra, and United States v. Dill, ubi supra, grew out of a condition of facts which originated after the Revised Statutes were enacted.

United States v. Mason, decided by us on February 24, 1904, 129 Fed. 742, 64 C. C. A. 270, does not touch this case, as it relates to the disbursements of a clerk of the District Court, to which section 830 of the Revised Statutes has no relation. The result is that, as we have said, we concur with the conclusions of the Circuit Court.

The judgment of the Circuit Court is affirmed.